Clara **TORRES**, Plaintiff,

v.

**$36,256.80 U.S. CURRENCY, Drug Enforcement Administration, New York Division,** Defendants.

**No. 91 Civ. 2436 (PKL).**

United States District Court, S.D. New York.

July 7, 1993.

---

Clara Torres, pro se.

Mary Jo White, U.S. Atty., S.D.N.Y., New York City (Ellen Silverman Zimiles, of counsel), for defendant.

## OPINION AND ORDER

LEISURE, District Judge

Plaintiff Clara Torres, proceeding *pro se*, brings this action to vacate a completed civil forfeiture action effected by the Drug Enforcement Administration ("DEA") pursuant to the Comprehensive Drug Abuse Preven-

tion and Control Act. DEA summarily forfeited a $30,000 certificate of deposit in the name of Rafael Torres, plaintiff's husband, following his conviction on a narcotics offense in the United States District Court for the Eastern District of Pennsylvania. Plaintiff frames her complaint as a motion to set aside the civil forfeiture for excusable neglect pursuant to Rule 60(b) of the Federal Rules of Civil Procedure and seeks return of the forfeited funds in the certificate of deposit, claiming to be the "innocent owner" of those funds.

The United States now moves to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or, in the alternative, for summary judgment pursuant to Rule 56(b). On March 31, 1993, the Honorable Nina Gershon, United States Magistrate Judge, Southern District of New York, issued a Report and Recommendation recommending that this Court grant the government's motion for summary judgment. For the following reasons, the Court adopts Judge Gershon's Report and Recommendation in its entirety and grants summary judgment to the defendant pursuant to Rule 56(b).

## BACKGROUND

On August 9, 1988, DEA seized from Chase Manhattan Bank a certificate of deposit registered in the name of Rafael Torres, plaintiff's husband, following his conviction on a narcotic offense. Rafael Torres did not object to the seizure and subsequent civil forfeiture of the certificate and does not join in the instant action. Plaintiff now contests the seizure, alleging that the funds in the certificate were the proceeds of a consumer loan she secured from Chemical Bank and subsequently "loaned" to her husband. Thus, Ms. Torres argues that DEA did not have probable cause to seize the certificate as the proceeds of illegal drug activity.

Plaintiff alleges that on June 5, 1988 she applied for a $30,000 consumer loan from Chemical Bank. Complaint ¶ 14 & Exs. D, E.[1] Ms. Torres asserts that she:

---

1. In paragraph 13 of the complaint, plaintiff alleges that she applied for the consumer loan on

May 15, 1988. For the purposes of the instant

took out the consumer loan at Chemical Bank to assist her husband in re-establishing his credit as a businessman. Rafael Torres has experienced some difficulties in past business ventures and needed to re-establish his credit.

Complaint ¶ 19. Chemical Bank approved the loan and issued a bank check, dated June 30, 1988, in the name of Rafael Torres. Complaint ¶ 15 & Ex. F.

On June 23, 1988, Rafael Torres purchased a $30,000 certificate of deposit from Chase Manhattan Bank. Complaint ¶ 16 & Ex. G. Rafael Torres is the certificate of deposit's only registered owner; the line on the certificate of deposit entitled "Name of Joint Party" is blank. Complaint Ex. G.

Plaintiff asserts that the funds used by Mr. Torres to purchase the certificate on June 23, 1988 were the proceeds of the consumer loan check issued by Chemical Bank and dated June 30, 1988. Complaint ¶¶ 13, 14, 15 & 16. Plaintiff has proffered two explanations for the discrepancy in the dates over the course of this litigation. Originally, she alleged that the date on the loan check was the result of a "typo on the check, for it is dated 6/30/88." Complaint Ex. H, Affidavit of Rafael Torres, dated March 15, 1990, ¶¶ 4, 6 & 7. However, Ms. Torres' evidence in support of her allegation—a letter from Rosa Deliz, a sales representative employed by Chemical Bank—merely states that plaintiff "applied for a $30,00 loan on June 15, 1988," and that "[t]he loan was approved and paid out on June, 1988." Complaint Ex. E. Plaintiff's second explanation for the discrepancy in the dates is that "the check was post-dated June 30, 1988 (which plaintiff failed to recall)" by Chemical Bank on its own initiative and without her approval.[2] Plaintiff states that she "cannot dictate banking procedures, why Chemical Bank post-dated the check...." Objections to the U.S. Magistrate Report, dated May 20, 1993 ("Objections"), ¶ 4. In

support of this second explanation, Ms. Torres submits a second letter from Rosa Deliz of Chemical Bank. This evidence, however, directly contradicts plaintiff's assertion that the post-dating of the check was done at Chemical Bank's own initiative. The letter, dated April 21, 1993, states in pertinent part: "At the customers [sic] request, the check was made payable to her husband Rafael Torres and post dated June 30, 1988." The government argues that the plaintiff has failed to adequately explain why the loan check was post-dated and why Chase Manhattan Bank would deposit on June 23, 1988 a check that was non-negotiable until June 30, 1988.

Plaintiff does not claim to have obtained a security interest in Mr. Torres' property in exchange for the $30,000 "loan" to him, nor does Ms. Torres claim to have executed a written agreement with Mr. Torres detailing the conditions of the "loan" to her husband. Plaintiff does allege that "[a]fter the maturization [sic] of the certificated of deposit, it was agreed upon, that Rafael Torres would repay the total amount of the certificate of deposit with interest accrued to the claimant." Complaint ¶ 19. In his affidavit, Mr. Torres states that "[t]his money is hers. She took out the loan to assist me in re-establishing my credit, but it was agreed that I would repay her the full amount of the certificate of deposit upon maturization [sic] in June 1991." Complaint Ex. H, ¶ 11.

On August 9, 1989, DEA agents seized the certificate of deposit from Chase Manhattan Bank pursuant to a warrant of seizure. Complaint ¶ 3 & Ex. A; Notice of Motion, dated March 16, 1992, Declaration of William J. Snider, Forfeiture Counsel, Drug Enforcement Administration, United States Department of Justice, dated March 12, 1992 ("Snider Dec."), ¶ 4(a). Pursuant to section 881(a)(6) of Title 21 of the United States Code,[3] DEA determined that there existed

---

motion, it is unnecessary to ascertain the exact date she applied for the consumer loan.

**2.** Plaintiff failed to present this explanation to Judge Gershon. Thus, Judge Gershon did not have the opportunity to assess plaintiff's claim in light of this evidence. This Court will consider plaintiff's proffer despite its untimeliness, as the

review of the Report and Recommendation is *de novo*.

**3.** Section 881(a)(6) of Title 21 states:
 (a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:
   . . . .

probable cause to seek the civil forfeiture of the certificate as the proceeds of illegal drug activity.[4]  Snider Dec. ¶ 4(b).

On August 24, 1988, a Notice of Seizure letter was sent via certified mail, return receipt requested, to Mr. Torres at his last known location of incarceration at the Chester County Prison in Pennsylvania and also to Mr. Torres' last known residence, which is also plaintiff's current residence.[5]  Snider Dec. ¶ 4(b).  Although the Notice of Seizure letter was received at the Chester County Prison, it was returned to DEA marked "Not at Chester County Prison."  Snider Dec. ¶ 4(b) & Ex. 3.  Mr. Torres is currently incarcerated at the Federal Correctional Institution in Petersburg, Virginia.  Complaint Ex. H.  The letter sent to the residence was returned to DEA marked "Return to Sender" with a notation indicating that the letter had not been claimed.  Snider Dec. ¶ 4(b) & Ex. 2.

Beginning on September 7, 1988, pursuant to 19 U.S.C. § 1607(a), DEA published notice of the seizure of the certificate in *USA Today;* the published notice ran for three weeks.  Snider Dec. Ex. 4.  Both the letter notice and published notice explained that two procedures were available to a claimant seeking to avoid forfeiture.  First, a claimant could contest the forfeiture of the property in federal court by filing a claim no later than September 27, 1988 and posting a bond.  *See* 19 U.S.C. § 1608.  Both forms of notice also explained that a claimant could file a petition for remission or mitigation of the forfeiture.[6]  Snider Dec. Ex. 4.  On October 31, 1988, the deadline for the filing of claims having passed with no claim having been filed, DEA declared the certificate to be administratively forfeited pursuant to 19 U.S.C. § 1609(a).  Snider Dec. Ex. 5; *see* 19 U.S.C. § 1609(b) ("A declaration of forfeiture under [19 U.S.C. § 1609(a)] shall have the same force and effect as a final decree and order of forfeiture in a judicial forfeiture proceeding in a district court of the United States.").

Plaintiff alleges that she did not realize that the certificate had been forfeited until "a stop payment was made on a check on 6/22/89 to close down the [certificate] in my husband's behalf, then [I] realized that something was wrong."  Plaintiff's Affidavit in Opposition to Defendant's Motion for Sum-

---

(6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this title, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this title, except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

21 U.S.C. § 881(a).

**4.**  In order to demonstrate a prima facie case for civil forfeiture under 21 U.S.C. § 881(a)(6), the government need only demonstrate probable cause to believe that the property in question is subject to forfeiture under the provisions of that section.  21 U.S.C. § 881(b)(4); *United States v. United States Currency in the Sum of Three Hundred Ninety–Three Thousand Nine Hundred Sixty–Seven ($393,967) Dollars, More or Less,* 775 F.Supp. 43, 48 (E.D.N.Y.1991).

**5.**  Pursuant to 19 U.S.C. § 1607(a) the government must:

cause a notice of the seizure of [the] articles and the intention to forfeit and sell or otherwise dispose of the same according to law to be published for at least three successive weeks.... Written notice of seizure together with information on the applicable procedures shall be sent to each party who appears to have an interest in the seized article.

*See also* 21 C.F.R. § 1316.75.

**6.**  Under 19 U.S.C. § 1618, "any person interested in" property declared or adjudicated forfeited may file "a petition for the remission or mitigation of such ... forfeiture."  If the government determines that "such ... forfeiture was incurred without wilful negligence or without any intention on the part of the petitioner to ... violate the law, or finds the existence of such mitigating circumstances as to justify the remission or mitigation of such ... forfeiture," then the government may remit or mitigate the forfeiture.  *Id.*  Pursuant to DEA regulations, to

request "remission" (the DEA calls this a "pardon") of the forfeiture [the claimant must submit] a petition to the DEA's Asset Forfeiture Section within 30 days of receipt of notice.  28 C.F.R. § 9.3.  If the claimant elects only this option, the DEA "shall presume a forfeiture."  28 C.F.R. § 9.5(a).  The DEA's discretion in making a remission decision is cabined by the criteria set forth in 28 C.F.R. § 9.5.

*Onwubiko v. United States,* 969 F.2d 1392, 1398 (2d Cir.1992).

mary Judgment and or Dismissal, dated April 21, 1993 ("Opposition"), ¶ 7 & Ex. (bank check stamped "PAYMENT STOPPED"). Ms. Torres, however, failed to immediately file a claim because she was unaware that DEA regulations and statutory authority provide certain procedures to contest a forfeiture. She delayed seeking relief until December 1990, when a friend suggested that she could recover the forfeited certificate of deposit. Complaint ¶¶ 7, 8; Snider Dec. ¶ 4(e).

In a letter dated January 2, 1991, plaintiff challenged the forfeiture of the certificate.[7] Complaint Ex. B. DEA responded on January 22, 1991, informing Ms. Torres that DEA required the case number or seizure identifier to investigate her challenge to the forfeiture. Snider Dec. Ex. 6. Plaintiff submitted the required information by letter dated February 1, 1991. Complaint Ex. B. In a February 14, 1991 letter, DEA notified plaintiff that the "case is now closed," because the time to file a claim to challenge the forfeiture had expired. Snider Dec. Ex. 8. Plaintiff filed the instant case on April 8, 1991, alleging that she is the owner of the certificate and that the certificate was wrongly forfeited.

## DISCUSSION

### I. *Standard for Summary Judgment*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Lang v. Retirement Living Pub. Co.*, 949 F.2d 576, 580 (2d Cir.1991). Summary judgment "is appropriate only 'after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient

to establish the existence of an element essential to that party's cause, and on which that party will bear the burden of proof at trial.'" *Thornton v. Syracuse Sav. Bank*, 961 F.2d 1042, 1046 (2d Cir.1992) (quoting *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552); *accord Irvin Indus., Inc. v. Goodyear Aerospace Corp.*, 974 F.2d 241, 245 (2d Cir.1992).

"In deciding whether to grant summary judgment all inferences drawn from the materials submitted to the trial court are viewed in a light most favorable to the party opposing the motion. The nonmovant's allegations are taken as true and it receives the benefit of the doubt when its assertions conflict with those of the movant." *Cruden v. Bank of New York*, 957 F.2d 961, 975 (2d Cir.1992). "Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." *Id.; accord Taggart v. Time, Inc.*, 924 F.2d 43, 46 (2d Cir.1991); *see also Lang*, 949 F.2d at 580 ("In determining how a reasonable jury would decide, the court must resolve all ambiguities and draw all inferences against the moving party."); *Binder v. Long Island Lighting Co.*, 933 F.2d 187, 191 (2d Cir.1991) ("Viewing the evidence produced in the light most favorable to the nonmovant, if a rational trier could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate.").

The substantive law governing the case will identify those facts that are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there does indeed exist a genuine issue for trial." *Id.*, 477 U.S. at 249, 106 S.Ct. at 2511.

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and identifying which materials "it believes

---

**7.** DEA acknowledges receipt of plaintiff's letter on December 31, 1990. Snider Dec. ¶ 4(e).

demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. Once a motion for summary judgment properly is made, however, the burden then shifts to the nonmoving party, which " 'must set forth specific facts showing that there is a genuine issue for trial.' " *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511 (quoting Fed.R.Civ.P. 56(e)); *accord Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 146 (2d Cir.1993). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2570. "Conclusory allegations will not suffice to create a genuine issue. There must be more than a 'scintilla of evidence,' and more than 'some metaphysical doubt as to the material facts.' " *Delaware & Hudson Ry. Co. v. Consolidated Rail,* 902 F.2d 174, 178 (2d Cir.1990) (quoting *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512, and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)), *cert. denied,* —— U.S. ——, 111 S.Ct. 2041, 114 L.Ed.2d 125 (1991). "The nonmovant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990) (quotations omitted); *see also Gnazzo v. G.D. Searle & Co.,* 973 F.2d 136, 138 (2d Cir.1992) (The Court must "consider the record in the light most favorable to the nonmovant. However, the nonmovant may not rest upon the mere allegations or denials of her pleading, but must set forth specific facts showing that there is a genuine issue for trial.") (quotation and citations omitted). However, the Court draws all reasonable inferences in favor of the nonmoving party only after determining that such inferences are reasonable, considering all the evidence presented. *See, e.g., Apex Oil Co. v. DiMauro,* 822 F.2d 246, 252 (2d Cir.), *cert. denied,* 484 U.S. 977, 108 S.Ct. 489, 98 L.Ed.2d 487 (1987).

## II. *Standing*

DEA brought a civil forfeiture proceeding against the certificate of deposit at issue in the instant case pursuant to section 881(a)(6) of the Comprehensive Drug Abuse Prevention and Control Act. 21 U.S.C. § 881(a)(6). Civil forfeiture is an *in rem* proceeding. Criminal forfeiture, by contrast, is an *in personam* proceeding brought by the government against the criminal defendant. *See United States (DEA) v. One 1987 Jeep Wrangler Automobile VIN # 2BCCL8132HBS12835,* 972 F.2d 472, 476 (2d Cir.1992). As noted above, DEA declared the certificate of deposit in the instant case summarily forfeited when no claims challenging its forfeiture were filed during the time period for objections under the controlling statute.

As a threshold matter, plaintiff must establish standing in order to challenge the civil forfeiture of the certificate of deposit. Plaintiff bears the burden of proof with respect to the requirement that she demonstrate standing to contest the forfeiture. *United States v. New Silver Palace Restaurant, Inc.,* 810 F.Supp. 440, 442 (E.D.N.Y.1992). Ms. Torres' claim arises under the "innocent owner" defense provided pursuant to the Comprehensive Drug Abuse Prevention and Control Act. That defense, which is found in section 881(a)(6) of Title 21, United States Code, provides in pertinent part:

> no property shall be forfeited under this paragraph, to the extent of an *interest of an owner,* by reason of any act or omission established by *that owner* to have been committed or omitted without the knowledge or consent of *that owner.*

21 U.S.C. § 881(a)(6) (emphasis supplied).

■ Accordingly, in order to establish standing to assert the "innocent owner" defense, Ms. Torres must demonstrate that she has the "interest of an owner" in the forfeited certificate. The legislative history of section 881(a)(6) indicates that Congress intended the term "owner" in the provision to "be broadly interpreted to include any person with a recognizable legal or equitable interest in the property seized." Joint Explanatory Statement of Titles II and III, 95th Cong.,

2d Sess. (1978), *reprinted in* 1978 U.S.C.C.A.N. 9518, 9522.

Plaintiff asserts two principle bases for satisfying the threshold requirement of standing. First, Ms. Torres claims she has the requisite "interest of an owner" in the forfeited certificate because she is a creditor of her husband, having loaned to him the money used to purchase the forfeited certificate. Objections ¶ 3. Second, plaintiff claims the "interest of an owner" in the certificate by virtue of her status as Mr. Torres' spouse, since she loaned her husband the money in the certificate pursuant to a "joint-plan [sic] by husband-wife [sic]...." Objections ¶ 3.

## A. *General Unsecured Creditor*

■ Ms. Torres alleges that the funds used to purchase the forfeited certificate were the proceeds of a consumer loan she received from Chemical Bank and loaned to Mr. Torres to assist him in re-establishing his credit rating. Complaint ¶ 19. Therefore, Ms. Torres claims the funds in the forfeited certificate are in fact her property. Complaint ¶¶ 12, 13. However, Ms. Torres does not claim to have taken a security interest in any property titled to Mr. Torres as collateral for the loan money used to purchase the certificate, nor does she claim to have executed a written loan agreement with her husband. Consequently, Ms. Torres is merely a general or unsecured creditor.

Despite the indication in the legislative history of section 881(a)(6) that the term "owner" in the provision was intended by Congress to be broadly interpreted, unsecured creditors have not been recognized as having the requisite "interest of an owner" in property subject to civil forfeiture necessary to assert the "innocent owner" defense set forth in section 881(a)(6). *See United States v. Campos,* 859 F.2d 1233, 1239 (6th Cir.1988) ("Despite this broad construction of § 881(a)(6) unsecured creditors generally have been unsuccessful in pursuing claims against property subject to civil forfeiture....") (quoting *United States v. Reck-*

meyer, 836 F.2d 200, 206 n. 3 (4th Cir.1987), cert. denied, 479 U.S. 850, 107 S.Ct. 177, 93 L.Ed.2d 113 (1986)).

Nevertheless, Ms. Torres, relying on the Fourth Circuit's decision in *Reckmeyer,* contends that she, as an unsecured creditor, has standing to challenge the civil forfeiture of the certificate of deposit. Objections ¶ 3. In *Reckmeyer,* two unsecured creditors asserted standing to challenge a criminal forfeiture settlement effected under 21 U.S.C. § 853, arguing that some of the property forfeited by the debtor was not the fruit of illegal drug activity. The forfeited property in *Reckmeyer* represented virtually the entire estate of the debtor. To demonstrate standing to contest a criminal forfeiture under section 853(n)(6)(A), the creditors were required to demonstrate "a legal interest in the forfeited property." *Reckmeyer,* 836 F.2d at 205. The Court in *Reckmeyer* held that a general creditor has standing to contest the criminal forfeiture of a particular piece of property only in the rare instance where the government seizes all or virtually all of the debtor's estate. *Id.,* 836 F.2d at 205–06. In support of her claim that she meets the threshold requirement of standing in the instant case, Ms. Torres cites the *Reckmeyer* court's suggestion in *dicta* that general creditors also may have standing to contest the civil forfeiture of a particular piece of property under section 881(a)(6)'s "innocent owner" defense when the government seizes all, or virtually all, of the debtor's estate. *Id.,* 836 F.2d at 205–06 & n. 3.

Plaintiff's reliance on *Reckmeyer* is misplaced for two reasons. First, the Second Circuit in *United States v. Schwimmer* expressly declined to follow *Reckmeyer.*[8] 968 F.2d 1570 (2d Cir.1992). The *Schwimmer* Court, addressing the question of whether an unsecured creditor has standing to challenge a criminal forfeiture pursuant to 18 U.S.C. § 1963(1)(6)(A), which is identical in language to the forfeiture provision at issue in *Reckmeyer,* wrote:

> We turn then to the question of whether a general creditor has an interest in prop-

---

8. Only the Ninth Circuit has followed the *Reckmeyer* decision. *See United States v. Mageean,* 649 F.Supp. 820, 827–31 (D.Nev.1986) (unse-

cured creditors of owner of forfeited property have standing to contest criminal forfeiture), *aff'd,* 822 F.2d 62 (9th Cir.1987).

erty ordered forfeited that invalidates an order of forfeiture. We hold that it does not.

. . . .

A general creditor has no interest in a particular asset or particular funds. . . . The general creditor's interest therefore does not threaten to undermine the Court's jurisdiction over the property, and does not invalidate the order of forfeiture.

*Schwimmer,* 968 F.2d at 1581.

Second, plaintiff does not allege that the certificate seized by the government represented all or virtually all of Mr. Torres' estate. Plaintiff does assert that she:

is raising 2 daughters and 1 sone [sic]. It is expensive to live in New York, and expensive to provide schooling to [sic] her 3 children. Plaintiff desperately needs this money returned to her so we all can continue living.

Objections ¶ 4. However, this is not an assertion that the certificate of deposit represented all or virtually all of Mr. Torres' assets. Therefore, the Court need not decide whether the *Reckmeyer* dicta suggesting an exception to the general rule that unsecured creditors do not have standing to contest civil forfeitures applies in the instant case. *See United States v. Security Marine Credit Corp.,* 767 F.Supp. 260, 265–66 (S.D.Fla.1991) (in a criminal forfeiture case, court need not decide whether to apply *Reckmeyer's* " 'entire estate' exception to circumvent the practice of denying recovery to unsecured creditors" when "the government did not seize all of [the defendant's] assets.").

Considering the Second Circuit's refusal to confer standing upon unsecured creditors seeking to contest criminal forfeitures, plaintiff's failure to assert that all or virtually all of her husband's property was forfeited and thereby not falling within the narrow exception articulated in dicta in *Reckmeyer,* and the general rule that unsecured creditors lack standing to contest civil forfeitures, this Court must conclude that Ms. Torres, as an unsecured creditor, lacks the requisite "interest of an owner" in the certificate to establish standing to challenge the certificate's civil forfeiture as an "innocent owner" pursuant to section 881(a)(6).

**B. *Plaintiff's Status as Spouse of the Owner of the Certificate of Deposit***

■ Ms. Torres next contends that her status as Mr. Torres' spouse establishes a sufficient "interest of an owner" in the forfeited certificate to meet the threshold requirement of standing to contest the forfeiture. *See* Memorandum in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment and or Dismissal, dated April 27, 1992, ¶ 5 ("the plaintiff is the lawful wife of Rafael Torres, and all things under the law of marriage are held in possession together."). This contention is incorrect as a matter of law.

■ State law rather than federal law defines an owner's interest in property. *See United States v. Leasehold Interest in 121 Nostrand Ave., Apartment 1–C, Brooklyn, N.Y.,* 760 F.Supp. 1015, 1035 (E.D.N.Y.1991); *see also United States v. Lot 9, Block 2 of Donnybrook Place, Harris County, Texas,* 919 F.2d 994, 1000 (5th Cir.1990); *United States v. Certain Real Property Located at 2525 Leroy Lane, W. Bloomfield, Michigan,* 910 F.2d 343, 349 (6th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1414, 113 L.Ed.2d 467 (1991); *United States v. One Single Family Residence with Outbuildings Located at 15621 S.W. 209th Ave., Miami, Florida,* 699 F.Supp. 1531, 1536 (S.D.Fla. 1988), *aff'd,* 894 F.2d 1511 (11th Cir.1990). Since the Torres' domicile is New York City, New York law governs the interest Ms. Torres has in her spouse's property.

■ Under New York law, one spouse may validly own property separate and apart from the other spouse. *See In re Schwartz,* 133 Misc.2d 1064, 1065, 509 N.Y.S.2d 729, 731 (Surr.Ct. Nassau Cty.1986), *rev'd in part, aff'd in part,* 139 A.D.2d 640, 527 N.Y.S.2d 279 (1988); *see also* Governor's Memorandum of Approval, McKinney's 1980 Session Laws of NY, at 1863. Therefore, unlike other states, New York is not a community property state. *See Peterson v. Goldberg,* 146 Misc.2d 474, 476, 550 N.Y.S.2d 1005, 1007 (Sup.Ct. Rockland Cty.1990) ("The laws of New York do not entitle each spouse to a present vested ownership in marital property

during marriage, as in community property states."), *aff'd*, 180 A.D.2d 260, 585 N.Y.S.2d 439 (2d Dep't 1992). Only upon the dissolution or termination of a marriage, a situation not present in the instant case, is one spouse entitled to an equitable distribution of property owned separately by the other spouse. *See* N.Y.Dom.Rel.Law § 236[B][5][A].

As noted above, the forfeited certificate was registered solely in the name of Rafael Torres; no other party was named on the certificate as having an ownership interest in the certificate. Complaint Ex. G. In addition, plaintiff does not allege that she acquired a security interest in any of Rafael Torres' property as collateral for the funds used to purchase the certificate or to have executed a written agreement detailing the terms of the alleged "loan." Consequently, under New York law plaintiff's mere status as the spouse of Mr. Torres does not demonstrate that she has an "interest of an owner" in the forfeited certificate sufficient to satisfy the threshold requirement of standing to assert an "innocent owner" defense pursuant to section 881(a)(6).

### III. *Merits of Plaintiff's Claim*

The Court notes that Judge Gershon recommended that this Court find that the plaintiff had failed to establish that there were triable issues of fact necessitating a trial and that summary judgment on the merits of plaintiff's claim properly could be entered in favor of the government. Report and Recommendation, at 22. This Court declines to reach out to decide this issue, as plaintiff has failed to demonstrate standing to contest the civil forfeiture of the certificate.

### CONCLUSION

For the foregoing reasons, the Report and Recommendation of the Honorable Nina Gershon, United States Magistrate Judge, Southern District of New York, dated March 31, 1993 is adopted in its entirety with respect to Judge Gershon's finding that plaintiff Clara Torres lacks standing to contest the forfeiture at issue in this action. The defendant's motion for summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure hereby is granted. The motion is dismissed.

**SO ORDERED.**