# Liability of the United States for State and Local Taxes on Seized and Forfeited Property

In civil forfeiture proceedings (under 21 U S C § 881), the United States is obligated to pay liens for state and local taxes accruing after the commission of the offense leading to forfeiture and before the entry of a judicial order of forfeiture, if the lien-holder establishes, before the court enters the order of forfeiture, that it is an innocent owner of the interest it asserts

In criminal forfeiture proceedings (under 18 U S C. § 1963 or 21 U S C. § 853), the United States may not pay such liens because state and local tax lien-holders are not bona fide purchasers for value of the interests they would assert, and therefore do not come within any applicable exception to a statute that, upon entry of a court's final order of forfeiture, vests full ownership retroactively in the United States as of the date of the offense.

October 18, 1993

MEMORANDUM OPINION FOR THE DIRECTOR AND CHIEF COUNSEL
EXECUTIVE OFFICE FOR ASSET FORFEITURE

You have asked us to reconsider our opinion that property seized by and forfeited to the United States is not subject to state or local taxation for the period between the commission of the offense that leads to the order of forfeiture and the entry of the order of forfeiture. *See Liability of the United States for State and Local Taxes on Seized and Forfeited Property*, 15 Op. O.L.C. 69 (1991) ("Harrison Memorandum"). In light of the Supreme Court's decision in *United States v. 92 Buena Vista Ave.*, 507 U.S. 111 (1993), we partially reverse our opinion.

Because states and localities may not tax federal property (absent express congressional authorization),[1] the time at which ownership of forfeited property passes to the United States and the extent of the ownership interest that passes to the United States determine whether state and local taxes are owed. In many property transactions, the time and the extent of transfer of ownership are unambiguous and independent issues. In cases of transfers of ownership under the federal forfeiture statutes, however, the answer to the question of when ownership is transferred has been a matter of dispute, and of great consequence for the extent of the interest transferred.

The Harrison Memorandum expresses the Justice Department's traditional view that title vests in the United States at the time of the offense. This view is based on

---

[1] *See, e g , United States v City of Detroit*, 355 U S 466, 469 (1958) ("a State cannot constitutionally levy a tax directly against the Government of the United States or its property without the consent of Congress"), *M'Culloch v. Maryland*, 17 U S (4 Wheat.) 316 (1819).

an interpretation of the "relation back" doctrine, which provides that a judicial order of forfeiture retroactively vests title to the forfeited property in the United States as of the time of the offense that leads to forfeiture, not as of the time of the judicial order itself. *See* 21 U.S.C. § 881(h) ("[a]ll right, title, and interest in property [subject to forfeiture] shall vest in the United States upon commission of the act giving rise to forfeiture . . . ."); 18 U.S.C. § 1963(c), 21 U.S.C. § 853(c) (substantially identical to quoted language from 21 U.S.C. § 881(h)). Under the Department's traditional interpretation, title in forfeited property vests in the federal government at the time of the offense. The date of the judicial order of forfeiture is not significant. From the date of the offense, states and other parties are barred from acquiring interests in the property from the owner whose interests are forfeited to the United States. *See In re One 1985 Nissan*, 889 F.2d 1317, 1319-20 (4th Cir. 1989); *Eggleston v. Colorado*, 873 F.2d 242, 245-48 (10th Cir. 1989), *cert. denied*, 493 U.S. 1070 (1990) (cases decided before *Buena Vista* and consistent with the Harrison Memorandum).

The Harrison Memorandum considers and rejects several possible grounds for limiting the operation of the relation back doctrine and requiring payment of state and local tax liens for the period between the offense and the forfeiture order. The two grounds of principal concern here are the "innocent owner" defense in the civil drug forfeiture statute, *see* 21 U.S.C. § 881(a)(6)[2], and the "bona fide purchaser" defense in the criminal drug forfeiture statute, *see* 21 U.S.C. § 853(c), and in the forfeiture provision of the RICO statute, *see* 18 U.S.C. § 1963(c). The Harrison Memorandum concludes that these defenses do not protect a state or locality (or anyone else) who innocently acquires a property interest after the time of the offense. The Supreme Court's decision in *Buena Vista* forces us to reconsider this conclusion. We conclude that the Harrison Memorandum's conclusion concerning the innocent owner defense must be reversed, but that the Harrison Memorandum's conclusion regarding the bona fide purchasers defense is correct (although this latter conclusion is less certain than the Harrison Memorandum indicates and we reach it through an analysis different from that set forth in the Harrison Memorandum).

## I.

The civil drug forfeiture statute provides that "no property shall be forfeited . . . , to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner." 21 U.S.C. § 881(a)(6). The Harrison Memorandum

---

[2] The conclusions with regard to § 881(a)(6), the innocent owner provision immediately at issue in *Buena Vista* and applicable to all "things of value" traceable to an exchange for a controlled substance also apply to § 881(a)(7), which contains a nearly identical innocent owner provision applicable to real property used in a drug offense *See* notes 3, 7, *infra*

accepted that "owner" could include a state or locality holding a tax lien on the property. *See* Harrison Memorandum, 15 Op. O.L.C. at 72 . The Memorandum concluded, however, that this "innocent owner" provision does not apply to asserted property interests that arise after the time of the offense because, as of the moment of the offense, the property belongs (by operation of the relation back doctrine) to the United States, and not to the person from whom a third party innocently acquires an interest.

We conclude, consistent with the Harrison Memorandum, that a state or locality holding a tax lien can be an "owner" as that term is defined in the civil forfeiture statute's innocent owner provisions. The broad language of the statute — "[a]ll . . . things of value" and "[a]ll real property, including any right, title and interest" — provides no reason to exclude a tax lien-holder from the definition of "owner." 21 U.S.C. § 881(a)(6), (7). The legislative history urges a broad reading.[3] And the courts have followed, sometimes explicitly, the path suggested by Congress.[4] The "innocence" requirement of an innocent owner defense would seem to be easy to satisfy in most cases. Like an innocent donee or purchaser, a state or locality holding a tax lien generally has obtained its interest without knowledge of the offense giving rise to the forfeiture.

The Harrison Memorandum's further conclusion with regard to the innocent owner defense, however, cannot survive the ruling in *Buena Vista*. The plurality and concurring opinions reject the interpretation of the relation back doctrine set forth in the Harrison Memorandum, and agree that the innocent owner defense is available to persons who acquire interests in forfeitable property after the commission of the offense that rendered the property subject to forfeiture. The opinions differ only as to the reading of the statute that leads to this result.

The plurality and the concurrence both analyze the common law doctrine of relation back as transferring ownership of forfeited property retroactively to the date of the offense, *but only* upon the entry of a judgment of forfeiture. Until a court issues such a judgment, this retroactive vesting of ownership in the United States does not occur, and all defenses to forfeiture that an owner of the property otherwise may invoke will remain available. Thus, a person who has acquired an interest in the property may raise any such defense in a forfeiture proceeding. If that

---

[3] *See* Joint Explanatory Statement of Titles II and III of Pub L No 95-633, 95th Cong , 2d Sess. (1978), *reprinted in* 1978 U S C C A N 9522 (in § 881(a)(6), "[t]he term 'owner' should be broadly interpreted to include any person with a recognizable legal or equitable interest in the property seized "), *see also* S. Rep. No 98-225, at 195, 215 (1984), *reprinted in* 1984 U.S.C C A N 3182, 3378, 3398 (describing § 881(a)(7) as, in effect, extending § 881(a)(6) to cover real property used in a drug offense but not acquired with proceeds of prohibited drug transactions)

[4] *See, e g., United States v. 717 S. Woodward St ,* 2 F 3d 529, 535 (3d Cir.1993) (citing legislative history); *United States v 6960 Miraflores Ave ,* 995 F.2d 1558, 1561 (11th Cir 1993) ("Lien holders have the right to assert their claim[s] of innocent ownership" under § 881(a), as interpreted in *Buena Vista*); *United States v 6109 Grubb Rd.,* 886 F 2d 618, 625 n 4 (3d Cir 1989) (cited in *Buena Vista* and citing legislative history); *see also United States v. 2350 N W 187 St ,* 996 F.2d 1141, 1144 (11th Cir 1993) (*Buena Vista* analysis of § 881(a) innocent owner provisions assumed to apply where purported innocent owner is local tax lien holder).

person prevails, a judgment of forfeiture will not vest (retroactively) ownership of that property interest in the United States. *Buena Vista*, 507 U.S. at 125-27, 128-30 (plurality opinion) 131-38 (Scalia, J., concurring).

The plurality and the concurrence both conclude that the federal civil forfeiture statute is fully compatible with the common law, and that the statutory innocent owner clause provides a defense for a third party who innocently acquires ownership of the property after the offense and before a judgment of forfeiture. The plurality notes that § 881(h), which sets forth the relation back doctrine for the civil forfeiture statute, applies that doctrine only to "property described in subsection (a) of this section." Subsection (a)(6) excepts, from its description of forfeitable property, the property of an innocent owner. Therefore, in the plurality's analysis, subsection (a) places the property of an innocent owner beyond the reach of the forfeiture and relation back provisions in subsection (h). *See Buena Vista*, 507 U.S. at 127-30. Accordingly, an ownership interest in forfeitable property that is transferred to an innocent person (after the offense giving rise to forfeiture) does not vest in the United States as of the time of the offense. Indeed, it does not vest in the United States at all.

Interpreting the civil forfeiture statute as a more straightforward codification of common law doctrine,[5] the concurrence reads the phrase, in subsection (h), "'shall vest in the United States upon commission of the act giving rise to forfeiture'" as meaning "'shall vest in the United States upon forfeiture, effective as of commission of the act giving rise to forfeiture.'" *Buena Vista*, 507 U.S. at 134 (Scalia, J., concurring).[6] The result, of course, is the same as under the plurality's analysis: a property interest innocently acquired after the offense is not forfeited to the United States if an owner asserts the interest in a proper and timely way, before the entry of a forfeiture judgment.

In sum, we reverse the Harrison Memorandum's conclusion that the innocent owner defense, set forth in 21 U.S.C. § 881(a), does not protect state and local claims for tax liabilities arising between the time of an offense rendering property subject to forfeiture and the issuance of a court order of forfeiture.[7]

---

[5] The concurrence specifically rejects the plurality's reading of the phrase, in subsection (h), "property described in subsection (a)" as meaning, in effect, "property forfeitable under subsection (a)." The concurrence stresses that subsection (h) refers to "property *described* in subsection (a)," not property deemed forfeitable under subsection (a) Since subsection (a) describes property generally and does not declare that property that cannot be forfeited is not "property," the "property described in subsection (a)" refers to all relevant property interests, including those of innocent owners *Buena Vista*, 507 U S. at 133 (Scalia, J, concurring)

[6] The concurrence "acknowledge[s] that there is some textual difficulty with th[is] interpretation," but argues, first, that the imprecision imputed to the quoted language in subsection (h) is to be expected "in a legal culture familiar with retroactive forfeiture" and, second, that the civil forfeiture statute as a whole, including subsection (d) and its adoption of forfeiture procedures applicable under 19 U.S C. §§ 1602-1631, does not make sense if one rejects the concurrence's reading of subsection (h) (and the plurality s reading of subsections (a) and (h)). *Buena Vista*, 507 U S at 134 (Scalia, J. concurring).

[7] The local tax lien cases decided by lower courts since the Supreme Court s decision in *Buena Vista* do not alter our conclusion In *2350 N.W 187 St*, 996 F 2d 1141, the court vacated the judgments in two cases in which the district courts had relied on the interpretation of the relation back doctrine described in the

## II.

The two federal criminal forfeiture statutes addressed in the Harrison Memorandum do not contain an innocent owner defense.  Those statutes, however, do provide protection for a "transferee [who] establishes in a hearing [to 'amend' an order of forfeiture] that he is a bona fide purchaser for value of [the] property [subject to criminal forfeiture] who at the time of purchase was reasonably without cause to believe that the property was subject to forfeiture." 21 U.S.C. § 853(c); 18 U.S.C. § 1963(c) (same).  The Harrison Memorandum concluded that this statutory "bona fide purchaser" defense is not available to a state or locality asserting a lien for tax liability incurred after the offense that made the property subject to forfeiture.

We conclude, consistent with the apparent assumption of the Harrison Memorandum, that such tax liens are "property" or an "interest" in property under the two criminal forfeiture statutes. Both statutes define property broadly, as including all "real property" and all "tangible and intangible personal property, including rights, privileges, interests, claims and securities." 21 U.S.C. § 853(b); 18 U.S.C. § 1963(b) (same); *see also* 21 U.S.C. § 853(c), (n)(6); 18 U.S.C. § 1963(c), (l)(6) (forfeiture and bona fide purchaser defense provisions referring to "interest" in such property). The legislative history and the courts' application of this statutory language also suggest a definition of property interests broad enough to include state and local tax liens on real property.[8]

---

Harrison Memorandum, and had granted summary judgment against a county invoking the innocent owner defense in 21 U.S.C. § 881(a)(6), (7) to assert liens for property taxes owed for some of the period between an offense giving rise to forfeiture and the entry of a judgment of forfeiture.  The appellate court remanded the cases for further consideration in light of the Supreme Court's decision in *Buena Vista*

In *United States v  7501 S W  Virginia St.*, No 92-921-BE (D Ore Aug. 3, 1993), the district court held that a county asserting a lien, for taxes accruing after the offense, in a forfeiture proceeding was an innocent owner under § 881(a)(6), but that the relation back doctrine had vested the title in the United States as of the date of the offense and therefore precluded payment of the tax lien.  To support this conclusion, the court quoted the plurality's statement in *Buena Vista* that "[o]ur decision denies the Government no benefits of the relation back doctrine " Slip op. at 6 (quoting 507 U.S  at 129).  The court has taken this quotation out of context, interpreting it as meaning, in effect, "our decision denies the Government no benefits of the relation back doctrine as it had been understood, erroneously, in the case law that *Buena Vista* rejects " The district court simply misunderstands or ignores the Supreme Court's holding.  This misinterpretation does not appear to be widely shared by courts applying the *Buena Vista* analysis of the relation back doctrine in analogous contexts  *See, e.g , United States v  Daccarett*, 6 F 3d 37, at 53-54 (2d Cir  1993); *United States v 41741 Nat'l Trails Way*, 989 F.2d 1089, 1091 (9th Cir. 1993); *2350 N.W  187 St.*, 996 F.2d 1141, 1144; *United States v. One 1990 Lincoln Town Car*, 817 F. Supp. 1575, 1579-80 (N D Ga 1993).

[8] *See* S. Rep  No. 98-225, at 193, *reprinted in* 1984 U S C.C A N  at 3376 (section enacting current 18 U S C  § 1963(c) and 21 U.S C  § 853(c) "allows the use of criminal forfeiture as an alternative to civil forfeiture in all drug felony cases"), *id.* at 211, *reprinted in* 1984 U.S.C C A N  at 3394 (property defined as subject to criminal forfeiture under 18 U S C. § 1963(a) and 21 U S C. § 853(a) is equivalent to property subject to civil forfeiture under 21 U S C  § 881(a)), *United States v. Reckmeyer*, 836 F.2d 200, 205 (4th Cir. 1987) (unsecured creditor who has reduced his claim to judgment and acquired a lien could seek an amendment to a forfeiture order under 21 U S C  § 853(n)); *United States v  Robinson*, 721 F. Supp. 1541, 1545 (D.R.I. 1989) (a leasehold interest ordinarily is a real property interest within the definition in 21 U.S C § 853(b)), *see also United States v  Monsanto*, 491 U S. 600, 606-09 (1989) (noting breadth of forfeitable property under 21 U S.C. § 853(a))

The Harrison Memorandum suggests two arguments — one based on the relation back doctrine and another based on the definition of bona fide purchaser — to support its conclusion that the bona fide purchaser defense does not extend to holders of property interests that consist of liens for state and local taxes for the period after the offense and before a judgment of forfeiture.

## A.

The Harrison Memorandum's central argument concerning the relation back doctrine addresses the bona fide purchaser defense no less than the innocent owner defense. *See* Harrison Memorandum, 15 Op. O.L.C. at 72. On the interpretation set forth in the Harrison Memorandum, the United States has owned the property since the commission of the offense giving rise to the criminal forfeiture, and no one, including a bona fide purchaser, can later acquire any interest from the former owner.

Although the question is a closer one than in the civil forfeiture context, we conclude that the Supreme Court's decision in *Buena Vista* rejects this argument as well.[9] We recognize that the plurality's holding is based on a reading of the civil forfeiture statute (and its innocent owner provisions) and does not address the criminal forfeiture statutes (and their bona fide purchaser provisions). That holding also does not require the plurality to adopt the interpretation of the common law relation back doctrine that the opinion sets forth. Nonetheless, the plurality's discussion of the common law doctrine makes clear that it agrees with the concurrence that the relation back doctrine vests ownership retroactively in the United States only upon entry of a final judgment of forfeiture. Under that reading, if a state or locality establishes that it is a "bona fide purchaser" of an interest in the property by virtue of a tax lien, and does so before a court orders forfeiture, the order of forfeiture will not extend to the lien-holder's interest and, therefore, will not vest title to that interest in the United States.[10]

We also recognize that the concurrence in *Buena Vista* suggests that the relation back doctrine precludes a bona fide purchaser defense under the criminal statutes where it allows an innocent owner defense under the civil statute. As the concurrence points out, the criminal forfeiture statutes establish a procedure by which a person asserting a bona fide purchaser defense raises that defense *after* the court has entered an order of forfeiture. *See* 21 U.S.C. § 853(n); 18 U.S.C. § 1963(l). In contrast, the civil forfeiture process (on both the plurality's and the concurrence's

---

[9] *Cf. United States v Harry*, 831 F Supp. 679, 686-87 (E D Iowa) (drawing on *Buena Vista* discussion of innocent owners to resolve bona fide purchaser issue under the criminal forfeiture statute)

[10] This conclusion would follow rather simply from the Court's analysis in *Buena Vista* when the state or locality asserts its bona fide purchaser defense at or before the proceedings in which the court issues an order of forfeiture The conclusion is less certain under the procedure set forth in the criminal forfeiture statutes, which provides for assertion of bona fide purchaser claims at a hearing held after the court issues an initial order of forfeiture The remainder of this subsection addresses this issue

reading) contemplates that a person asserting an innocent owner defense will do so *before* the court enters an order of forfeiture. As the concurrence sees it, in the former case, the court order already has vested title retroactively in the United States (effective as of the date of the offense) before the "transferee" asserts a claim to be a bona fide purchaser. In the latter case, however, the court will not yet have issued the order vesting title retroactively when the "owner" asserts an innocent owner claim. (The concurrence argues that the civil statute's use of the term "owner" and the criminal statutes' use of "transferee" reflects this distinction and suggests its significance.) On this view, if a transferee's claim to be a bona fide purchaser succeeds and the court amends the order of forfeiture, the amendment does not void, retroactively, the initial retroactive vesting of title in the United States. The amendment to the initial order of forfeiture simply effects a new transfer of title to the bona fide purchaser, leaving undisturbed the United States' ownership from the time of the offense to the time of the amendment to the forfeiture order. *See Buena Vista*, 507 U.S. at 136 (Scalia, J., concurring).

The *Buena Vista* concurrence fails to establish, however, that the criminal forfeiture statutes' bona fide purchaser defense does not protect liens for state and local tax liabilities incurred after the offense giving rise to the forfeiture. Only the concurrence advances the argument. The plurality does not join in it, and nothing in the dissenting opinion suggests that the dissenters would adopt the concurrence's views.

Further, the concurrence's argument reads too much into the actual, multi-step procedures by which a court adjudicates a criminal forfeiture claim. It thereby overlooks — or confuses those procedures with — the more fundamental legal (and fictional) process through which a retroactive transfer of ownership occurs. The better interpretation of the criminal forfeiture statutes is that the procedures of entering an order of forfeiture, holding a hearing at which transferees assert claims to be bona fide purchasers, and amending the order of forfeiture upon successful presentation of such a claim are but phases in a single (if protracted) process for determining what property interest vests, retroactively, in the United States when the court enters its final, amended order of forfeiture. The entire process is the equivalent of the single order of forfeiture in the civil context.

This interpretation fits more easily with the statutory language, especially when that language is read in light of the discussion in *Buena Vista* of common law relation back doctrine. The criminal forfeiture statutes provide that title in property subject to forfeiture "shall be ordered forfeited to the United States *unless* the transferee establishes" that he is a bona fide purchaser for value, and that "the United States shall have clear title to [the] property" only *"following* the court's disposition of all petitions" filed by transferees asserting claims to be bona fide purchasers. 21 U.S.C. § 853(c), (n)(7); 18 U.S.C. § 1963(c), (l)(7) (emphasis added). Such language would seem to suggest that the United States *never obtains* title from a bona fide purchaser, not that the United States first obtains title and

then must give it back. Only after the entry of the final, amended order of forfeiture would ownership vest retroactively in the United States.[11]

This conclusion also avoids an incongruity that the concurrence's interpretation would create: an innocent owner (under the civil statute) would owe state and local taxes from the moment he or she acquired the property, but a bona fide purchaser for value (under the criminal statutes) would not owe taxes from the time he or she acquired the property until the time the court amended the order of forfeiture.

Finally, the conclusion we reach also is consistent with the statutory distinction between "owner" and "transferee." A person claiming to be a bona fide purchaser is nothing more than a transferee until he or she establishes to the court that he or she is a bona fide purchaser (whether the transferee does so after an initial forfeiture order, as the statute contemplates, or at some earlier stage). Only after the transferee has made this showing is he or she recognized as an owner (indeed, an innocent owner) of a particular type. Similarly, a person claiming to be an innocent owner is recognized as an innocent owner only after he or she proves to the court that he or she meets the standards of innocent ownership. Before that, such a person is, in the eyes of the court, merely a transferee. The civil forfeiture laws simply do not address or refer explicitly to those who assert, but have not yet established, that they are innocent owners.

For these reasons, we do not believe that the concurrence's discussion of the legal significance of the differences between the civil and criminal forfeiture statutes (which, in any case, is unnecessary to its conclusions) is correct.

## B.

The Harrison Memorandum also states that state and local tax authorities cannot "qualify as bona fide purchasers for value" under the criminal forfeiture statutes. Harrison Memorandum, 15 Op. O.L.C. at 72. The Memorandum does not set forth the basis for this conclusion. The *Buena Vista* plurality and concurrence have nothing to say about this issue and, thus, do not require a reversal of the Harrison Memorandum. Although the matter is not free from doubt, we believe that the stronger argument is that state and local tax lien-holders are not "bona fide purchasers."

---

[11] Although the statutory language does not fit perfectly with the interpretation adopted here, somewhat imprecise drafting concerning the sequence of events leading to a retroactive vesting of title is, as the *Buena Vista* concurrence points out, perhaps to be expected in a legal culture familiar with retroactive vesting *See Buena Vista*, 507 U S at 134.

Moreover, the legislative history of the criminal forfeiture provisions also seems to support the interpretation set forth in this Memorandum. It refers to bona fide purchaser claims, raised after the initial forfeiture order, as "in essence, . . . challenges to the *validity* of the order of forfeiture," and, when successful, as "render[ing] that portion of the order of forfeiture reaching [the bona fide purchaser's] interest *invalid* " S Rep. No. 98-225, at 208, *reprinted in* 1984 U S C.C.A.N. at 3391 (emphasis added)

The courts have not adopted a clear and uniform view of how to interpret "bona fide purchaser" under the criminal forfeiture statutes. *See, e.g., United States v. Lavin*, 942 F.2d 177, 182-89 (3d Cir. 1991) (bona fide purchaser acquires interest through volitional, advertent and, generally, commercial transaction; victim of embezzlement acquired interest through unwitting and inadvertent tortious action of another and therefore was not a bona fide purchaser); *Reckmeyer*, 836 F.2d at 206-08 (bona fide purchaser includes a general, unsecured creditor of defendant who gave value to defendant in arms'-length transaction with expectation that he would receive equivalent value in the future, and whose interest must have been in some part of the forfeited property because debtor's entire estate had been forfeited); *cf. United States v. Campos*, 859 F.2d 1233, 1237-38 (6th Cir. 1988) (general, unsecured creditor is not a bona fide purchaser, because he does not have a legal interest in the forfeited property); *Torres v. $36,256.80 U.S. Currency*, 827 F.Supp. 197, 203 (S.D.N.Y. 1993) (similar to *Campos*; also pointing out significance, for general, unsecured creditor, of unusual circumstance in *Reckmeyer* that entire estate had been seized); *United States v. Mageean*, 649 F. Supp. 820, 824, 829 (D. Nev. 1986) (definition of bona fide purchaser cannot be "stretch[ed]" to include tort claimants, but "there is no reason that a good-faith provider of goods and services," although an unsecured creditor, "cannot be a bona fide purchaser"), *aff'd without opinion*, 822 F.2d 62 (9th Cir. 1987); *see also United States v. 3181 S.W. 138th Place*, 778 F. Supp. 1570, 1574-75 (S.D. Fla. 1991) (civil forfeiture case stating that locality is not bona fide purchaser by virtue of tax lien), *vacated on other grounds*, 996 F.2d 1141 (11th Cir. 1993); S. Rep. No. 98-225, at 201, 209, *reprinted in* 1984 U.S.C.C.A.N. at 3384, 3392.

We are aware of no case that has decided the precise question at issue here. We acknowledge that some of the claims that courts have rejected are weaker than those presented by tax liens, and that at least one court has pointed to a primary purpose of the criminal forfeiture statutes' relation back provisions that would not be served by denying the bona fide purchaser defense to holders of liens for state and local taxes. *See Reckmeyer*, 836 F.2d at 208 ("Congress's primary concern in adopting the relation-back provision was to make it possible for courts to void sham or fraudulent transfers that were aimed at avoiding the consequences of forfeiture"). Nonetheless, we have found no authority that has construed bona fide purchaser broadly enough to encompass such a tax lien-holder.

A state or locality does provide something of value, in the form of government services, in return for the interest it acquires in property (ultimately in the form of a lien) by virtue of its taxing authority. This exchange, however, does not fit the transactional, arms'-length exchange of values contemplated in the case law and suggested by the statutory phrase "bona fide purchaser for value."[12]

---

[12] *See, e g., Lavin*, 942 F 2d at 185-86 (Congress derived bona fide purchaser exception "from hornbook commercial law" principle of protecting the "'innocent purchaser for valuable consideration'" which had developed at common law "in order to promote finality in commercial transactions and thus to . . foster

Therefore, we do not reverse the Harrison Memorandum's conclusion that the bona fide purchaser provisions cannot be relied upon to require payment of state and local tax liens.[13]

## III.

For the reasons set forth above, we reach the following conclusions: In civil forfeiture proceedings (under 21 U.S.C. § 881), the United States may — and, indeed, must — pay liens for state and local taxes accruing after the commission of the offense leading to forfeiture and before the entry of a judicial order of forfeiture, if the lien-holder establishes, before the court enters the order of forfeiture, that it is an innocent owner of the interest it asserts. In criminal forfeiture proceedings (under 18 U.S.C. § 1963 or 21 U.S.C. § 853), however, the United States may not pay such liens because state and local tax lien-holders are not bona fide purchasers for value of the interests they would assert, and therefore do not come within any applicable exception to a statute that, upon entry of a court's final order of forfeiture, vests full ownership retroactively in the United States as of the date of the offense.

WALTER DELLINGER
*Assistant Attorney General*
*Office of Legal Counsel*

---

commerce"), *Reckmeyer*, 836 F 2d at 208 (scope of bona fide purchaser provision "construed liberally" is to protect "all persons who give value to the defendant in an arms'-length transaction with the expectation that they would receive equivalent value in return")

[13] The Harrison Memorandum also found that payment of liens for state and local taxes, accruing after the offense, was not within the Attorney General's discretionary authority under 28 U.S C § 524(c)(1)(D) ("payment of valid liens . against property that has been forfeited") or 28 U.S.C § 524(c)(1)(E) (payments "in connection with remission or mitigation procedures relating to property forfeited"). We reach the same conclusion through a different analysis A tax lien-holder who establishes that he or she is an innocent owner under the civil forfeiture statute or a bona fide purchaser under the criminal statutes is protected from the operation of the relation back doctrine, and need not rely on the Attorney General's discretionary payment of a valid lien or remission or mitigation of a forfeiture that has not occurred with respect to the lien-holder's interest See S. Rep. No. 98-225, at 207-08, 217, *reprinted in* 1984 U.S C C A.N at 3390-91, 3400, *Lavin*, 942 F 2d at 185 (bona fide purchaser provisions designed to require protection previously left to discretion of Attorney General). If the tax lien-holder fails to establish that he or she is protected by one of these defenses to forfeiture, there can be no "valid lien" for taxes to be paid and no forfeited interest (in the form of tax liabilities) for the Attorney General to "remi[t] or mitigat[e] " Because ownership of the property will have vested in the United States as of the commission of the offense, state and local authorities cannot (absent a congressional waiver of immunity from state and local taxation that we do not find in 28 U.S C. § 524 or elsewhere) levy taxes on such property after the date of the offense any more than they could levy taxes on a federal courthouse or post office