Clara **TORRES**, Plaintiff–Appellant,

v.

**$36,256.80 U.S. CURRENCY,**
Defendant–Appellee.

No. 871, Docket 93–6202.

United States Court of Appeals,
Second Circuit.

Argued Feb. 28, 1994.

Decided June 10, 1994.

⬯194.1

CLARA TORRES, pro se.

Treby McL. Williams and Gabriel W. Gorenstein, Asst. U.S. Attys. (Mary Jo White, U.S. Atty. for the S.D.N.Y.), on the brief, for defendant-appellee.

Before: KEARSE and LEVAL, Circuit Judges and POLLACK, Senior District Judge.*

LEVAL, Circuit Judge:

Plaintiff Clara Torres appeals from an order of the district court (Leisure, J.) granting the Government's motion for summary judgment dismissing her complaint, 827 F.Supp. 197. The complaint seeks to set aside a declaration of forfeiture issued by the Drug Enforcement Administration on October 31, 1988, against a $30,000 certificate of deposit (hereinafter "C.D.") in the name of Rafael Torres. Clara, who is the wife of Rafael Torres, claims that she, not Rafael, is the beneficial owner of the C.D., and that the C.D., furthermore, represents the proceeds of a legitimate bank loan, not illegal drug transactions. The district court found that Clara Torres lacked standing to challenge the forfeiture. We disagree.

## Background

21 U.S.C. § 881 authorizes the civil forfeiture of funds that are the proceeds of drug transactions. Following the conviction of Clara Torres's husband, Rafael Torres, on a narcotics offense in the Eastern District of Pennsylvania, the government sought a warrant authorizing the Drug Enforcement Administration to seize, preliminary to forfeiture, a $30,000 Certificate of Deposit registered to Rafael Torres at Chase Manhattan Bank in Manhattan. Based on an affidavit made before her by a DEA agent, United States Magistrate Judge Sharon E. Grubin found probable cause to believe the C.D. was subject to forfeiture under 21 U.S.C. § 881(a)(6) as "proceeds traceable to ... an exchange [for a controlled substance]," and issued the warrant.[1]

---

* The Honorable Milton Pollack, United States Senior District Judge for the Southern District of New York, sitting by designation.

1. The statute provides:

(a) The following shall be subject to forfeiture to the United States and no property right shall exist in them: ...

(6) All moneys ... furnished or intended to be furnished by any person in exchange for a controlled substance ... all proceeds traceable to such an exchange, and all moneys ... used or intended to be used to facilitate any violation of this subchapter

....

(b) Any property subject to civil forfeiture to the United States under this subchapter may be seized by the Attorney General upon process issued pursuant to the Supplemental Rules for Certain Admiralty and Maritime

As provided by 21 U.S.C. § 881(d), the notice provisions for seizures under the customs laws are applied to seizures under § 881. The applicable customs statute requires that "[w]ritten notice of seizure ... be sent to each party who appears to have an interest in the seized article," and that notice of seizure also be published for at least three successive weeks. 19 U.S.C.A. § 1607(a) (West Supp.1993).

The Government sent notice of seizure letters by certified mail to Rafael Torres at his last known home address and at the Chester County Prison in Westchester, Pennsylvania, and published notice of the seizure for three successive weeks in the newspaper *USA Today*. Both certified letters were returned to the Government undelivered; the letter to the Chester County Prison was stamped "Not at Chester County Prison." No further notices of forfeiture were mailed. The DEA naturally received no claims. On October 31, 1988, the DEA declared the C.D. forfeited pursuant to the summary forfeiture provision of 19 U.S.C.A. § 1609 (West Supp.1993), which permits the forfeiture to be concluded without further judicial intervention if no claim is filed after issuance of the seizure warrant.

According to sworn statements filed in the district court by Clara Torres, she first became aware of the DEA's action in June 1989, eight months after the forfeiture, and first learned in November 1990 that she could contest the forfeiture. In December 1990, and again in January and February 1991, Torres wrote to the DEA claiming that the C.D. belonged to her, not her husband, and asking that the seizure warrant be lifted from the C.D. After receiving notification from the DEA on February 14, 1991, that it considered her claim untimely (because it was made after conclusion of the forfeiture), she filed this suit on April 8, 1991, for return of the funds.

Clara Torres claims that the C.D. is her property. She seeks the benefit of the por-

tion of the civil forfeiture law that protects "innocent owners" from forfeiture of their property based on illegal acts of others beyond the owner's control:

> [N]o property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

21 U.S.C. § 881(a)(6). She also contends that the forfeiture is unauthorized by law because the C.D. was purchased with the proceeds of a bank loan she took out, not with the proceeds of illegal drug transactions.

Clara's complaint alleges that the C.D. "is rightfully hers, and not her husband's" (Complaint ¶ 12), and that the C.D. was placed in the name of Mr. Torres solely to help him establish credit, and with a mutual agreement that the property would remain hers, notwithstanding Rafael's nominal ownership, and be returned to her, together with all interest earned, upon maturity of the C.D. (Complaint ¶ 19).

She supports these allegations with affidavits sworn by herself and her husband. Rafael's affidavit, dated March 15, 1991, states the following: In June 1988, Clara took out a consumer loan in the amount of $30,000 from Chemical Bank. Intending to assist her husband in establishing credit, she directed the bank to make the check for the loan proceeds payable to him. Rafael Torres took the check to Chase Manhattan Bank, where he used it to purchase a $30,000 C.D. Rafael states unequivocally, "This money is hers.... [I]t was agreed that I would repay her the full amount of the certificate of deposit upon maturization in June 1991."

Clara's sworn letter to the U.S. Attorney and the DEA, dated January 2, 1991, recites the same series of events as "facts and precise details establishing that the $30,000.00 *is*

Claims by any district court of the United States having jurisdiction over the property....
   (d) The provisions of law relating to the seizure, summary and judicial forfeiture, and condemnation of property for violation of the

customs laws ... shall apply to seizures and forfeitures incurred, or alleged to have been incurred, under any of the provisions of this subchapter....
21 U.S.C.A. § 881 (West 1981 & Supp.1994).

*the claimant's* and it has been 'unlawfully' seized" (emphasis added). She also states that as of that date, she was continuing to make monthly payments on the loan that was used to purchase the C.D.

In addition to affidavits, Ms. Torres submits documentary evidence consisting of an agreement dated June 15, 1988, by which Chemical Bank loaned her $30,000; a sworn letter from Rosa Deliz, a Chemical Bank Sales Representative, dated April 21, 1993, which states that the check disbursing the loan was made payable to Rafael Torres at the request of Clara Torres and was postdated June 30, 1988; a copy of a Chemical Bank check to Rafael Torres for $30,000, dated June 30, 1988; and the Chase document issued when the C.D. was purchased on June 23, 1988, showing the "method of deposit" as "transfer from other bank."

The district court held that the facts asserted by Clara did not show a sufficient interest in the forfeited property to confer standing to contest the forfeiture. In the court's analysis, Clara loaned her husband $30,000, which he used to buy the C.D.; having obtained no security interest in her husband's property as collateral, she was merely his general unsecured creditor with no property interest in the C.D. As such, the court reasoned, Clara lacked standing to challenge the forfeiture. The court therefore granted the Government's motion for summary judgment.

We respectfully disagree with the district court's analysis. We find that Clara Torres asserts an ownership interest sufficient to confer standing to contest the forfeiture. Clara's allegations show more than the status of general creditor. Given some reasonable allowance for the drafting of her affidavits without the help of counsel, we find that Clara Torres has raised a triable issue of fact whether under New York law, she is the beneficial owner of a constructive trust, holding the C.D. as its corpus.

Secondly, because the mailed notices of the forfeiture were not reasonably calculated to notify Rafael, the nominal owner, and therefore did not meet the minimum standards prescribed by the Due Process Clause, Clara's claim has not been foreclosed by the forfeiture proceeding, and her suit is not untimely.

*Discussion*

### A. *Standing*

■ When a case has been dismissed for lack of standing, the appellate court's fundamental inquiry is whether "the appellants [have] alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). The contours of this inquiry have been fleshed out by cases which hold that to show standing, a litigant must allege a "distinct and palpable injury to himself," *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975), fairly traceable to the "putatively illegal conduct of the defendant," *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979), and likely to be redressed by the requested relief, *Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 44–45, 96 S.Ct. 1917, 1927–28, 48 L.Ed.2d 450 (1976). *See generally Gladstone, Realtors,* 441 U.S. at 99, 99 S.Ct. at 1607–08; *Schiavone v. United States (In re Appointment of Indep. Counsel),* 766 F.2d 70, 73–74 (2d Cir.), *cert. denied,* 474 U.S. 1020, 106 S.Ct. 569, 88 L.Ed.2d 554 (1985).

The standing inquiry is also informed by "whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Association of Data Processing Serv. Orgs., Inc., v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970). The legislative history of the forfeiture law indicates that a rather expansive "zone of interests" is protected by the innocent owner provision, 21 U.S.C. § 881(a)(6). The Congressional Record indicates that Congress intended this provision to "be broadly interpreted to include any person with a recognizable legal or equitable interest in the property seized." Joint Explanatory Statement of Titles II and III, 95th Cong., 2d Sess. (1978),

*reprinted in* 1978 U.S.C.C.A.N. 9518, 9522. Accordingly, courts have held that an allegation of ownership and some evidence of ownership are together sufficient to establish standing to contest a civil forfeiture. *United States v. $38,570 U.S. Currency,* 950 F.2d 1108, 1113 (5th Cir.1992) ("a claimant is required to submit some additional evidence of ownership along with his claim in order to establish standing to contest the forfeiture"). As the First Circuit has said, commenting on standing in a forfeiture action, "At this preliminary juncture ... the claimant need not prove the full merits of her underlying claim. All that needs to be shown is a 'facially colorable interest in the proceedings sufficient to satisfy the case-or-controversy requirement and "prudential considerations defining and limiting the role of the court." ' " *United States v. 116 Emerson St.,* 942 F.2d 74, 78 (1st Cir.1991) (citations omitted).

Evaluating Torres's claim, she clearly asserts a "distinct and palpable injury," *Warth,* 422 U.S. at 501, 95 S.Ct. at 2206—the loss of $30,000 through an allegedly unlawful forfeiture—that is the direct result of "putatively illegal" governmental action, *Gladstone, Realtors,* 441 U.S. at 99, 99 S.Ct. at 1607–08, and the injury would be redressed by a successful challenge to the forfeiture.

With respect to the "zone of interests," *Data Processing,* 397 U.S. at 153, 90 S.Ct. at 830, we respectfully disagree with the district court's conclusion that Clara has shown only the interest of a general creditor of her husband, and "lacks the requisite 'interest of an owner' in the certificate to establish standing to challenge the certificate's civil forfeiture...." (Op. at 1158.) In our view, Torres has alleged (and made a prima facie showing) that she possesses the beneficial ownership of a constructive trust over the C.D. and its proceeds.

■ A constructive trust arises under New York State law when one person in a confidential relationship with another transfers property in reliance on the transferee's promise to reconvey the property; if the promise is breached and unjust enrichment results, a constructive trust is imposed on the property in the transferor's favor. *See Simonds v. Simonds,* 45 N.Y.2d 233, 380

N.E.2d 189, 408 N.Y.S.2d 359 (Ct.Appeals 1978); *Foreman v. Foreman,* 167 N.E. 428, 251 N.Y. 237 (Ct.Appeals 1929) (Cardozo, J.); *Kopelman v. Kopelman,* 710 F.Supp. 99, 102 (S.D.N.Y.1989).

In the leading case of *Foreman v. Foreman,* the New York State Court of Appeals imposed a constructive trust to compel the return to a father of property that had succeeded from his intestate wife to their infant son. The husband had paid for the property and its upkeep, and there was testimony that the wife held title only for the husband's business purposes and had promised to give him a deed on demand and to dispose of the property at his direction. The Court of Appeals held that given the confidential relation of husband and wife, the husband's purchase of the property, and the wife's promise to hold it for his benefit, a constructive trust would be imposed on the property for the husband's benefit, and the son was compelled to convey the property to his father. The purpose of the equitable remedy of constructive trust is, according to the Court of Appeals, to avoid " 'unjust enrichment under cover of the relation of confidence.' " *Foreman,* 251 N.Y. at 240 (citation omitted). In another New York State case, a wife who held title to property purchased by her husband, who had promised to reconvey it to him, and in fact did reconvey it to his estate upon his death, was prevented from later changing her mind on the ground that had she not effectuated the reconveyance herself, she could have been compelled to, because a constructive trust would have been imposed on the property in favor of her husband's estate. *In re Estate of Wechsler,* 171 Misc. 738, 13 N.Y.S.2d 940 (Sur.Ct.1939), *aff'd,* 264 A.D. 915, 36 N.Y.S.2d 424 (1942), *aff'd,* 291 N.Y. 758, 52 N.E.2d 964 (1943).

Constructive trusts continue to be imposed by New York courts. In *Simonds v. Simonds,* 45 N.Y.2d 233, 380 N.E.2d 189, 408 N.Y.S.2d 359 (Ct.Appeals 1978), a constructive trust for the benefit of a first wife was imposed on life insurance proceeds paid to a second wife, under an insurance policy covering the man who had been husband to each. The court found that the requisite elements of a constructive trust were met where the

husband had promised to maintain a $7,000 life insurance policy on himself payable to his first wife; the first wife had transferred property in reliance on that promise (the "property" being a separation agreement); the transfer took place within the confidential relationship of husband and wife; the husband had breached his promise (by allowing the insurance policy in favor of his first wife to lapse); and the second wife had been unjustly enriched (by receiving $7,000 in insurance payments from a new policy that should have gone to the first wife). *See also Rogers v. Rogers,* 63 N.Y.2d 582, 473 N.E.2d 226, 483 N.Y.S.2d 976 (Ct.App.1984) (imposing constructive trust in circumstances similar to those in *Simonds* ); *Kopelman v. Kopelman,* 710 F.Supp. 99, 102 (S.D.N.Y.1989) (considering elements of constructive trust under New York State law to deny summary judgment); *cf. Collucci v. Collucci,* 58 N.Y.2d 834, 446 N.E.2d 770, 460 N.Y.S.2d 14 (Ct. App.1983) (no constructive trust where no promise to reconvey).

Under these authorities, the facts asserted by Clara would give rise to a constructive trust in the C.D. to her benefit. She makes a prima facie showing that within the confidential relationship of husband and wife, she transferred property (the loan proceeds) in reliance on her husband's agreement that the property acquired with the loan proceeds (the C.D.) was hers and his promise that the property would be reconveyed to her upon the maturity of the C.D.[2] The government's forfeiture forced a breach of that promise[3] that may result in a potentially unjust enrichment of the government (and commensurate unjust impoverishment of Clara) if Clara is denied standing to contest the forfeiture.[4] *See United States v. Marx,* 844 F.2d 1303, 1306–08 (7th Cir.1988) (holding, in forfeiture case, that circumstances surrounding mother's conveyance of stock to her son-in-law were sufficient under Wisconsin law to create constructive trust in stock in daughter's favor, where testimony showed such was intent of conveyance, despite facts that stock registered in husband's name, and that no documentation supported testimony).[5]

**2.** According to the Magistrate Judge, the fact that the loan proceeds check was dated June 30 and the C.D. was purchased June 23 was sufficient cause to find that the transactions could not have taken place as averred by the Torreses, and to grant summary judgment against Clara (Mag. R & R at 21). This discrepancy in dates was also noted in Judge Leisure's opinion (Op. at 1156–1157). Clara had already presented evidence, noted above, that the loan check was postdated when issued. Apparently in preparation for appeal, Clara continued her efforts to obtain documents supporting her position, and we note that she has now proffered a copy of the back of the loan check showing endorsement stamps dated June 23 and 24, which appear to verify that the check was negotiated on the date of the issuance of the C.D., prior to June 30, its apparent date of issuance.

**3.** We note that the cases do not require that breach of the promise to reconvey be intentional. In *Foreman* the breach was due to the wife's death intestate, yet a constructive trust was imposed on the transferred property and it was reconveyed to the transferor. Nor do they require that the *transferee* be the person who is unjustly enriched. In neither *Foreman* nor *Simonds* was the transferee unjustly enriched, yet a constructive trust was imposed. Thus in the present case, a constructive trust may be found even though breach of the promise to reconvey was not intentional, and even though it is the government, not the transferee Rafael Torres, that may be unjustly enriched.

**4.** On facts somewhat similar to those alleged here, the First Circuit, after finding that the wife of a drug dealer had standing to contest forfeiture of a house owned in her husband's name, held that by making mortgage payments totaling half the value of the house, and showing through testimony an intention of joint ownership, the wife was entitled to a resulting trust under Rhode Island law. *United States v. 116 Emerson St.,* 942 F.2d 74 (1st Cir.1991). The court also approved the award of one-half the value of the home to the wife after she proved she had no knowledge of her husband's drug dealing.

**5.** The facts alleged by Clara may be sufficient to uphold standing under other theories, as well. As described above, she claims to be the owner of the C.D. In light of the uncontested fact that the C.D. was held in her husband's name, she is best understood to claim that she is the beneficial owner, while her husband is merely the nominal owner. This claim may be cognizable under New York rulings that have recognized ownership in persons other than owners of record. For example, in *Ryen v. Terry (In re Terry),* 56 B.R. 713 (Bankr.W.D.N.Y.1986), a bankruptcy trustee sued to recover a disability payment of $19,000 that the debtor had deposited in her mother's bank account. Although the mother had sole legal title to the funds, the bankruptcy court granted the trustee's motion for turnover, holding that a bailment had been created by the debtor's deposit of funds into her mother's account, and that "[u]nder the bailment, the debtor

Clara's status as the apparent beneficiary of a constructive trust in the C.D. gives her standing to pursue the remedies of an "innocent owner" under the forfeiture statute, and also lends support to her challenge to the theory of the seizure—that the property was the proceeds of drug trafficking.[6]

## B. *Timeliness and Notice*

■ The Government defends on the additional grounds that, after due notice of the seizure in the manner authorized by statute, Clara failed to take timely action to protect her asserted rights. This argument depends on the provisions of the customs laws for forfeiture, which are adopted by reference in subparagraph (d) of the narcotics forfeiture statute. 21 U.S.C. § 881.

Section 1607(a) of the Customs Law, Title 19 U.S.C., provides that, in addition to at least three weeks of publication of the intention to forfeit, "[w]ritten notice … shall be sent to each party who appears to have an interest in the seized article." Under § 1608, claims must be filed within 20 days of first publication, accompanied by a bond. If no claim is timely filed, § 1609 authorizes the appropriate officer to "declare the [property] … forfeited, and [to] sell the same at public auction …," following which, the customs regulations provide that no claims can be accepted. 21 C.F.R. § 1316.80(a).

The Government contends that it complied with these laws. It contends that Clara was barred by her failure to claim the property within 20 days of the first publication. It argues further that her claim cannot be accepted because it was not made until after the C.D. was declared forfeited.

According to the Government, it complied with the requirement for written notice by mailing certified letters on August 24, 1988, to Rafael Torres, the apparent owner of the C.D., at his home address and at the Chester

---

did not transfer her equitable nor beneficial interests in those funds to her mother." *Id.* at 715. *See also Herzfeld & Stern v. Freidus*, 69 Misc.2d 578, 330 N.Y.S.2d 479 (1st Dep't 1971) (holding stock dividend payable to actual owner, not owner of record); *Bottiglieri v. Berman*, 55 Misc.2d 263, 284 N.Y.S.2d 949 (Sup.Ct.1967) (requiring that rent decontrol of apartment, premised on occupancy by "owner," be decided by reference to actual owner, not owner of record); *cf. Roberts v. Ely*, 20 N.E. 606, 607–08, 113 N.Y. 128, 131–32 (Ct.App.1889) (describing "action for money had and received to the use of another" that arises "[w]henever one person has in his possession money which he cannot conscientiously retain from another," and noting that "[i]t is immaterial, also, whether the original possession of the money by the defendant was rightful or wrongful. It is sufficient that the duty exists on his part, created by the circumstances, to account for and pay it over to the plaintiff."). *But see Palamone v. Newark Ins. Co.*, 74 Misc.2d 586, 345 N.Y.S.2d 269 (Sup.Ct.1973) (holding insurer of automobile's owner of record liable despite well-founded denial of true ownership, on public policy grounds).

The doctrine of the resulting trust provides another possible basis for Clara's ownership interest in the C.D. There is New York law to the effect that a resulting trust arises where there is an agreement by one person to purchase property for another, with the intent that the beneficial interest in that property reside not with the one who holds title to it, but with the purchaser. *See Mizrahi v. Mizrahi*, 57 Misc.2d 1021, 293 N.Y.S.2d 964 (Sup.Ct.1968) (finding resulting trust in proceeds of winning lottery ticket purchased in one son's name, to the benefit of mother and other son, where father bought tickets under various family members' names with intention that should any ticket win, all family members would share proceeds equally); 106 N.Y.Jur.2d, Trusts §§ 141–151. The common law doctrine of the "purchase money resulting trust," whereby a trust is automatically imposed, by operation of law, in favor of a purchaser when title of property bought by that purchaser is given to another, was abolished in New York State in the 1830s. N.Y.Est.Powers & Trusts Law § 7–1.3 (McKinney 1992). The abolition does not, however, prevent a court in equity from finding a resulting trust where circumstances surrounding a conveyance of property prove the requisite *intent* for the beneficial interest to remain with the conveyer. *Foreman v. Foreman*, 167 N.E. 428, 251 N.Y. 237 (Ct.App.1929); *Western Union Tel. Co. v. Shepard*, 62 N.E. 154, 169 N.Y. 170 (Ct.App.1901); 106 N.Y.Jur.2d, Trusts § 151. Clara's allegations would appear to establish a resulting trust in the C.D. to her benefit: it is property purchased with her funds and placed in her husband's name with an intention by both parties that she retain the beneficial ownership of the property. *See United States v. 116 Emerson St.*, 942 F.2d 74 (1st Cir.1991) (voiding forfeiture because under Rhode Island law, property subject of resulting trust); *United States v. Marx*, 844 F.2d 1303, 1308–1310 (7th Cir.1988) (same, under Wisconsin law).

6. We recognize that, even assuming the C.D. was purchased with funds loaned to Clara, it might nonetheless be subject to forfeiture if the Chemical Bank loan was secured by drug proceeds.

County Prison, "his last known location of incarceration." (William J. Snider Aff. at ¶ 4b.) As noted above, both letters were returned to the DEA by the Postal Service. The letter to the county prison was stamped "Not at Chester County Prison."

In our opinion, the giving of notice in this fashion did not satisfy the requirements of the statute, construed in accordance with the requirements of the Constitution. The Supreme Court's classic statement of the quality of notice required by the Due Process Clause is that "notice [must be] reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). The Supreme Court added that "when notice is a person's due.... [t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt." 339 U.S. at 315, 70 S.Ct. at 657.

The Government argued in its brief below that its publication and notice letters together met the *Mullane* requirement, quoting our opinion in *Weigner v. City of New York*, 852 F.2d 646 (2d Cir.1988), *cert. denied*, 488 U.S. 1005, 109 S.Ct. 785, 102 L.Ed.2d 777 (1989), that "where mailing is supplemented by ... publication, the risk of non-receipt is constitutionally acceptable." *Id.* at 651.

The Government's reliance on *Weigner* is misplaced. In *Weigner*, relying on a number of Supreme Court cases that have held ordinary first class mail is a constitutionally adequate means of notifying people that their property rights are in jeopardy, we rejected a property owner's claim that she was entitled to receive notice of a tax foreclosure action by certified, rather than regular, first class mail. There are two critical differences between *Weigner* and this case. First, this case is not one where the DEA made the reasonable assumption that first class mail had reached its destination; here, the agency knew that both certified letters were returned, unclaimed. Thus the DEA knew its letters had not succeeded in notifying Rafael. Furthermore, if the DEA had desired to give

Rafael actual notification, a simple call to the Bureau of Prisons would have sufficed to reveal where Rafael was serving his sentence. The DEA's assertion that "No other location of incarceration for Mr. Torres was known to DEA" may have been true, but this was easily curable. Rafael was residing at a place of the government's choosing, not his own. Although we do not suggest that the fact the letter was returned to the DEA unclaimed, standing alone, would support a conclusion that notice was insufficient, where the mailed notice of forfeiture is returned undelivered, the intended recipient is known by the notifying agency to be in government custody, and the agency fails to take steps to locate him in order to effectuate delivery of the notice, we hold that such notice does not satisfy the requirements of the statute.

■ The argument might be made that, because Clara's ownership was undisclosed, the government had no obligation to send written notice to her and could rely solely on the notice by publication. We see no merit to this contention. Assuming the facts to be as Clara contends, although she organized her affairs in such manner that the DEA could not know of *her ownership interest*, the identity of her legal representative was apparent. While she, as undisclosed beneficiary of a constructive trust, had no right to have notification of the seizure sent to her personally, she was entitled to have adequate notice sent to her trustee or nominee where the bank's records listed him as the owner. We can see no rational support for the proposition that one who chooses to hold one's property through a trustee or nominee gives up not only the right to be personally notified but also the right to have the trustee or nominee notified of seizure by the government.

\*     \*     \*

We therefore vacate the district court's order granting summary judgment to the Government and remand for trial of Clara Torres's claim. Because her claim involves sophisticated issues of New York property law, which a pro se litigant would have difficulty researching, we direct that pro bono counsel be appointed to represent her.

MILTON POLLACK, Senior District Judge, concurring in result:

I concur in so much of the majority ruling as holds that notice to Rafael Torres was insufficient because he was in the government's custody when delivery of notice of forfeiture was unsuccessfully attempted. When the government seeks forfeiture of property of a person who is at the time in government custody, the agency that initiates the forfeiture must find out in what government facility the person is being held and send the notice to the right place.

I do not join in the majority's theory that the record suggests the possibility of a constructive trust in favor of Clara Torres giving her standing if adequate notice to Rafael Torres had been given.