101 F.3d 278
 TIME WARNER CABLE OF NEW YORK CITY, a division of Time
Warner Entertainment Company, L.P., Plaintiff-Appellee,
v.
M.D. ELECTRONICS, INC., United Imports, Inc., Everquest,
Inc., Joseph A. Abboud, John Does 1-10, Jane Does 1-10,
Unidentified Corporations 1-10 and Unidentified Business
Entities 1-10, Defendants-Appellants.
 No. 999, Docket 96-9165.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 1, 1996.
Decided Nov. 27, 1996.
 
 James C. Sherwood, New York, N.Y. (Schlam Stone & Dolan, Bennette D. Kramer, of Counsel); Frederick A. Cary, Ft. Lauderdale, FL (Cary & Cary, of Counsel); Sandra L. Dougherty, Omaha, Nebraska (Lieben, Dahlk, Whitted, Houghton, Slowiaczek & Jahn, of Counsel); for Defendants-Appellants United Imports, Inc.
 Daniel J. Lefkowitz, Jericho, N.Y. (Daniel J. Lefkowitz, P.C., Patrick Sullivan, of Counsel), for Plaintiff-Appellee.
 Hogan & Hartson, L.L.P., Washington, DC (Gardner F. Gillespie, James J. Moore, David L. Littleton, of Counsel), Amicus Curiae for National Cable Television Association.
 Before: FEINBERG, WALKER and JACOBS, Circuit Judges.
 FEINBERG, Circuit Judge:
 
 
 1
 This case poses a potential conflict between federal courts in two different circuits. Defendants United Imports, Inc., d/b/a M.D. Electronics, Inc. and Everquest, Inc. (collectively United Imports or the debtor), and Joseph A. Abboud, President of United Imports, appeal from two orders, dated August 5, 1996 and August 22, 1996, of the United States District Court for the Eastern District of New York, David G. Trager, J. The orders granted plaintiff-appellee Time Warner Cable of New York City (Time Warner), a Division of Time Warner Entertainment Company, L.P., among other things, certain rights of discovery and inspection with respect to allegedly illegal sales by United Imports of cable television signal decoders. Prior to issuing these orders, Judge Trager had signed a temporary restraining order, dated July 11, 1996, and had conducted an extensive hearing on July 25, 1996, on Time Warner's motion for a preliminary injunction. After the July 25 hearing but before the two August orders were issued, United Imports filed a Chapter 11 petition in the bankruptcy court for the District of Nebraska. Defendants-appellants United Imports and Abboud contend that Judge Trager's two August orders were stayed by the automatic stay resulting from that petition in bankruptcy. For reasons stated below, we stay the orders under appeal, and direct Time Warner to seek limited discovery relief from the bankruptcy court in Nebraska. Meanwhile, we maintain this panel's jurisdiction over the appeal.
 
 I. Facts and Proceedings Below
 
 2
 Time Warner operates cable television systems pursuant to franchises awarded it by the City of New York. Its programming services are offered in standard packages, for which a subscriber pays a monthly rate. Subscribers may also purchase certain premium programming services for an additional monthly charge, as well as individual movies and other entertainment events for a per event fee. The signals for the programming services are generally transmitted to Time Warner via satellite from originators of the programs. Thereafter, Time Warner retransmits the signals to subscribers through a network of cable wiring and equipment. To prevent subscribers from receiving programming services for which they have not paid, Time Warner encodes or "scrambles" the signals prior to transmission. Transmitted signals are then descrambled for authorized viewing by means of a decoding device provided to subscribers. Time Warner's system is "addressable", which means that subscribers' descramblers are programmed by a central computer to enable viewing only of purchased programming services. It is possible, however, for an individual to install a non-addressable, or "pirate" descrambler, and thus receive all of Time Warner's scrambled programming services without authorization and without paying for them. Defendants-appellants were engaged in the business of manufacturing, modifying and selling such non-addressable decoding devices and related equipment (collectively decoders or pirate decoders).
 
 
 3
 On July 10, 1996, Time Warner commenced an action in the Eastern District against defendants-appellants and various unidentified individuals and business entities for alleged violations of the Communications Act, 47 U.S.C. §§ 553 and 605, and New York Public Service Law § 225.6. The complaint sought injunctive relief against such violations, a declaration that the violations were committed willfully and for the purposes of commercial advantage and private financial gain, actual and statutory damages, and imposition of a constructive trust over profits and revenues allegedly converted from Time Warner by virtue of defendants' actions. Time Warner also filed an ex parte application in the Eastern District for a temporary restraining order (TRO) against such violations.
 
 
 4
 As already indicated, Judge Trager issued the TRO on July 11, 1996. That order enjoined defendants from selling pirate decoders, destroying records or transferring assets. The TRO also required defendants to promptly provide Time Warner with copies of defendants' business records, including shipping records that contain information concerning allegedly illegal sales of the pirate decoders within Time Warner's New York franchise area. The TRO scheduled a preliminary injunction hearing for July 25, 1996.
 
 
 5
 On that date, Judge Trager conducted an evidentiary hearing, which consumed some 240 pages of transcript and lasted some six hours. Seven witnesses testified and more than 30 exhibits were introduced into evidence. It was apparent during the course of the hearing that the judge was aware that (1) a related Time Warner entity had sued United Imports and Abboud five years before in a similar action in the United States District Court for the District of Nebraska and had obtained an injunction; and (2) United Imports and Abboud had been indicted in the Northern District of Georgia on felony charges.[1] Toward the end of the hearing, Judge Trager announced that what he "propose[d] to do" was to "continue the injunction" and "grant a preliminary injunction barring [United Imports] from selling any decoders." He also noted that United Imports had agreed to allow Time Warner to monitor the inventory of pirate decoders in United Imports' possession in Nebraska "once or twice a week" to "ensure that these devices are not leaked out into the illegal marketplace."
 
 
 6
 One week later, on August 1, United Imports filed its petition for bankruptcy in Nebraska. Time Warner contends that defendants' purpose was to nullify Judge Trager's TRO and the oral order of July 25 through the automatic stay provisions of the Bankruptcy Code. 11 U.S.C. § 362(a).
 
 
 7
 The legal proceedings thereafter continued on parallel tracks in the Eastern District and in the Nebraska bankruptcy court. On August 5, Judge Trager issued a written order that confirmed his July 25 rulings in open court. The August 5 order modified and merged the earlier TRO and set forth substantially the terms of the judge's July 25 oral order with certain modifications not now relevant.
 
 
 8
 On August 9, Chief Bankruptcy Judge Timothy J. Mahoney of the Nebraska bankruptcy court granted the motion of United Imports for authorization to operate its business except for those aspects relating to the sale of pirate decoders. The bankruptcy court added that "[a]ll aspects" of Judge Trager's August 5 order remained "in full force and effect until and unless modified by [Judge Trager] or until [the bankruptcy court] makes a determination concerning the applicability of the automatic stay to some of the requirements of that order."
 
 
 9
 On August 19, the bankruptcy court granted the debtor's motion to stay the discovery obligations that Judge Trager had placed upon it, on the theory that the August 5 order was an impermissible continuation of pre-petition litigation against the debtor. The bankruptcy court apparently believed that on July 25 Judge Trager did not issue any order.[2] The bankruptcy court made clear that it would entertain a Time Warner request for discovery, suggesting that "in order for Time Warner to obtain information from the debtor regarding its claim, permission must be sought or relief from the automatic stay must be granted by the bankruptcy court."
 
 
 10
 Time Warner went back to Judge Trager. In an order dated August 22, the second of the two August orders on appeal to us, the judge stated his belief that limited discovery would not interfere with the reorganization of the debtor in the bankruptcy court. The judge pointed out that the discovery he had in mind would provide
 
 
 11
 information relating solely to third parties in the Time-Warner franchise area and to a portion of the debtor's business that it has discontinued and, second, Time-Warner will defray the $10,000 cost of the project, estimated by the defendant, now debtor, to the court on July 18, 1996.
 
 
 12
 At a conference with the parties on August 21, the judge had urged Time Warner to seek in the bankruptcy court a lifting of the automatic stay against discovery to get the requested information. Judge Trager's August 22 order noted that he had "sought to accommodate the interests of both parties under an arrangement in which plaintiff Time Warner would defray the cost of compliance while defendant, United Imports ... would agree ... not to challenge it before the Bankruptcy Court." The judge went on to observe that the debtor declined to agree, submitting a letter that "conservatively estimated that it would take between 6,000 and 7,500 work hours to generate the information requested." The judge unsurprisingly characterized this time estimate as "so exaggerated as to be frivolous" and bordering "on the sanctionable." He therefore ordered United Imports to provide Time Warner with already requested (and ordered) information regarding the sale of pirate decoders to customers within Time Warner's franchise area. Time Warner was ordered to pay $10,000 to United Imports to defray the costs of compliance.
 
 
 13
 On September 9, Judge Trager confirmed his August 5 and August 22 orders, and denied United Imports' motion to stay those orders pending appeal. In the course of that ruling the judge also rejected United Imports' argument, raised for the first time, that the two August orders "d[id] not require the disclosure of the names and addresses of defendant's customers in New York."
 
 
 14
 Meanwhile, Time Warner had moved in the Nebraska bankruptcy court for an order lifting the automatic stay to let its New York action proceed in its entirety. The bankruptcy court denied that motion in an opinion dated October 30, 1996.
 
 
 15
 After defendants-appellants filed their notice of appeal to this court, we granted their motion to stay Judge Trager's orders of August 5 and August 22. We heard the appeal on an expedited basis on November 1. At that time, we extended the stay of the two August orders pending the outcome of this appeal.
 
 II. Discussion
 
 16
 We are faced with what appears to be the start of a classic confrontation between two federal courts in different circuits. The parties before us raise basic questions concerning which court--the Eastern District of New York or the Nebraska bankruptcy court--may properly enter certain orders. See Celotex Corp. v. Edwards, 514 U.S. 300, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995); In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litigation, 140 B.R. 969 (N.D.Ill.1992). They argue in general terms over whether Judge Trager actually issued an oral preliminary injunction, in whole or in part, on July 25 and, if so, whether the July 11 written TRO and the July 25 oral injunction ceased to have legal validity upon the bankruptcy filing. They debate abstractly whether issuance of the August orders was a purely "ministerial act," see Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522 (2d Cir.1994), and whether those orders remain enforceable in whole or in part. And they engage in charges and counter-charges regarding good and bad faith, trading not implausible accusations of contempt of court.
 
 
 17
 We believe that it is not necessary or advisable to decide these issues immediately. As we understand this appeal, we are actually presented with an immediate controversy concerning only two provisions of Judge Trager's orders directed at preventing continued allegedly criminal behavior. One requires United Imports to disclose information relating to customers for its pirate decoders in Time Warner's New York franchise area. The other grants Time Warner certain inspection rights with respect to United Imports' storage of such decoders at its facilities in Nebraska.
 
 
 18
 The amicus brief filed by the National Cable Television Association emphasizes the scope of "the massive problem" of cable signal piracy in the industry. Time Warner of course has the right to attempt to stamp out such piracy of its own cable signals and it calls to our attention its prior efforts to do so. See e.g. Time Warner Cable of New York City v. Freedom Electronics, 897 F.Supp. 1454 (S.D.Fla.1995); Oceanic Cablevision, Inc. v. M.D. Electronics, 771 F.Supp. 1019 (D.Neb.1991) (suit brought against defendants-appellants in this case by a related Time Warner entity); Time Warner Cable of New York City v. U.S. Cable T.V., Inc., et al., 95 Civ. 2810 (E.D.N.Y.1995) (consent judgment); Time Warner Cable of New York City v. U.S. Cable T.V., Inc., et al., 920 F.Supp. 321 (E.D.N.Y.1996) (order finding U.S. Cable in contempt of earlier consent judgment for selling its toll-free "800" number and goodwill to M.D. Electronics).
 
 
 19
 The New York action represents another installment in Time Warner's efforts. However, the case has become entangled in the legal complications arising from parallel proceedings in two different circuits. We think that considerations of proper judicial administration suggest that Time Warner seek the relief it most urgently requires from the bankruptcy court, so that unnecessary conflict between courts perhaps may be avoided.
 
 
 20
 The heart of Judge Trager's discovery orders requires defendants-appellants to turn over to Time Warner the names and addresses of customers within Time Warner's New York franchise area who purchased pirate decoders from United Imports and who presumably continue to use those devices to steal cable services from Time Warner. Permission to obtain this limited discovery regarding third parties appears to be a reasonable request. Cf. In re Johns-Manville Corp., 41 B.R. 926 (S.D.N.Y.1984) (plaintiff entitled to relief from automatic stay to seek pretrial discovery of debtor in aid of its defense of third-party claim). Also, it is apparently common ground that United Imports is currently prevented from further sales, modification or manufacture of pirate decoders. While not pursued as vigorously before us, Time Warner seeks the right to inspect the facilities in Nebraska where United Imports stores an estimated 22,000 decoders in order to make sure that United Imports is complying with that direction.
 
 
 21
 However, Time Warner has not made a request to the bankruptcy court for this limited two-fold relief, despite the bankruptcy court's invitation and Judge Trager's urging that it do so. Instead, it asked the bankruptcy court to lift the stay to allow the New York action to proceed in its entirety. In its October 30 opinion, the bankruptcy court denied the application because neither sufficient cause nor bad faith in the debtor's bankruptcy filing existed to justify granting Time Warner complete relief from the automatic stay. The bankruptcy court's decision barely discussed discovery issues and focused instead on the relief that Time Warner ultimately sought in the New York action: monetary damages that could, the court noted, "amount in the tens, or possibly hundreds of millions of dollars" and a "constructive trust" on the debtor's assets. The court understandably reasoned that imposition of a constructive trust would result in great prejudice to the bankruptcy estate and other creditors, and that Time Warner's failure up to that time to file a proof of claim in the bankruptcy proceeding made it ineligible to share in the distribution of any estate assets.
 
 
 22
 Time Warner's all-or-nothing approach buried the compelling equities in its favor on the narrow issue of whether to grant it immediate, limited discovery. For example, Time Warner's 25-page brief filed in Nebraska in support of its motion to lift the automatic stay specifically discussed in only two paragraphs its interest in identifying the debtor's New York customers. Time Warner has received a ruling from the bankruptcy court on a technical issue of bankruptcy law regarding the effect of the automatic stay on Judge Trager's discovery orders and the proper court in which to seek relief. Time Warner has also received a broad ruling in which the bankruptcy court refused to exercise its equitable discretion to allow the New York action to proceed in its entirety. But Time Warner has yet to specifically request narrow discovery relief from the bankruptcy court.
 
 
 23
 We believe that the prudent course to follow at this time is for Time Warner to apply to the bankruptcy court for this narrow and specific relief. We direct it to do so, without prejudice to its ultimate legal positions, and to report back to us in writing on the disposition of such application. Meanwhile, this panel will retain jurisdiction over this appeal, cf. United States v. Jacobson, 15 F.3d 19, 22 (2d Cir.1994); In re Lomas Financial Corp., 932 F.2d 147, 151-52 (2d Cir.1991); IIT v. Vencap, Ltd., 519 F.2d 1001, 1019 (2d Cir.1975), and continue the stay on enforcement of Judge Trager's two August orders.
 
 
 
 [1]
 We are informed that on September 30, 1996, these defendants pleaded guilty to the charges. The Nebraska bankruptcy court has noted that "[a]lthough the conduct for which the guilty pleas were entered is not the actual conduct which is the basis for the New York [action], the conduct is of a similar nature." In the Matter of United Imports, Inc., 203 B.R. 162 (Bankr.D.Neb. 1996)
 
 
 [2]
 We note that defendants-appellants apparently concede in their brief to us that Judge Trager, at the very least, continued the July 11 written TRO at the July 25 hearing