UNITED STATES of America, Plaintiff–Appellee,

Devonshire Tech, Jacqueline A. Ju, Beng Tan, Kane & Fisher Gomberg, Thomas Bolan, Jiro Nakamura, Yasuko Nakamura, Victor C. Moses, Fausto Fausti, Thurston Little, Kaethe Schuchter, Good Luck Corp., Anne B. Pope, Tennessee Commissioner of Commerce and Insurance, as Liquidator of Franklin American Life Insurance Company, George George Dale, Mississippi Commissioner Of Insurance, Insurance Commission, Carroll Carroll Fisher, Insurance Commissioner and Receiver Farmers and Ranchers Life Insurance Company, Insurance Commission, Bruce I. Weiser, International Financial Services Life Insurance Company, Mike Pickens, Receivers of Old Southwest Life Insurance Company, Claimants–Appellees,

v.

PEOPLES BENEFIT LIFE INS. CO., Veterans Life Insurance Company, Movants–Appellants,

Park Avenue Travel Svcs., Claimant,

Ace Capital Re Overseas Ltd., formerly known as KRE Reinsurance Ltd., Movant,

Currency, U.S., $11,014,165.20, Currency, U.S., $160,000.00, Currency, U.S., $42,220.81, Currency, U.S., $600,000.00, Currency, U.S., $25,616.49, Currency, U.S., $44,812.41, Currency, U.S., $1,089.50, Currency, U.S., $747,000,00, Currency, U.S., $1,817.06, Currency, U.S., $10,223.66, Currency, U.S., $636,903.39, Currency, U.S., $28,284.97, Currency, U.S., $167,771.30, Currency, U.S., $950,000.00, Check, Chase Manhattan Bank, $30,398.33, Check, Chase Manhattan Bank, $1,092.22, LUCKY Star Investments, Turbo Commander Aircraft, Model 114TC, 1995, Mercedes Benz, 1995, Vin # WDBEA34E3SC225572, Mercedes Benz, E430W, 1998, Vin # WDBJF70F4WA664478, Mercedes Benz, 600 SEL, 1999, Vin # WDBGA57G7XA432096, Mercedes Benz, S500V, 1999, Vin # WDBGA51G9XA430195, Mercedes Benz, E320W, 1999, Vin # WDBJF65H4XA865206, Mercedes Benz, 1999, Vin # WDBGA57G0XA426950, Mercedes Benz, 1999, Vin # WDBGA57G1XA412183, BMW, 540I, 1998, Vin # WBADE632XWBW62956, BMW, 328, 1999, Vin # WBAAM5337XFR02760, BMW, 1999, Vin # BAGG8333XDN74476, Chevrolet, Tahoe, 1995, Vin # 1GNEK13K5SJ417234, Chevrolet, Tahoe, LS1500, 1995, Vin # 3GNEK13R0XJ446063, Chevrolet, Cavalier, 1995, Vin # 1G1JF12D8S7219638, Chevrolet, Cavalier, 1998, Vin

# 1G1JF12T0W7152692, Chevrolet, Cavalier LS, 1998, Vin # 3GIJF5245WS845159, Volvo, S70A SR, 1999, VIN # YV1LS55A0X1599258, Infinity, QX4, 1998, Vin # JNRAR05Y7WW025301, Lexus, GS400, Vin # JT8BH68X0X0013961, VOLVO, S70A, 1998, Vin # YV1LS5579W2506279, Defendants.

Docket Nos. 00–6361(L), 00–6360(CON).

United States Court of Appeals, Second Circuit.

Argued Oct. 26, 2001.

Decided Nov. 20, 2001.

Forrest B. Lammiman, Lord, Bissell & Brook, Chicago, IL, (Cary B. Samowitz, A. Kelly Turner, on the brief) for Appellant.

Douglass J. Schmidt, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, MO, (Douglas S. Skalka, on the brief) for Appellee.

Before: FEINBERG, MCLAUGHLIN, and F.I. PARKER, Circuit Judges.

PER CURIAM.

Movants–Appellants Peoples Benefit Life Insurance Company and Veterans Life Insurance Company (collectively "Peoples") appeal from the October 31, 2000 ruling of the United States District

Court of Connecticut (Burns, J.), denying their motions to intervene pursuant to Rule 24 of the Federal Rules of Civil Procedure ("Rule 24"). It is settled law that this Court has jurisdiction over an order denying intervention. *See, e.g., New York News, Inc. v. Kheel,* 972 F.2d 482, 485 (2d Cir.1992) ("Because a district court's order denying intervention is a final order, we have appellate jurisdiction."). We affirm for substantially the same reasons as set forth by the district court. *See United States v. One 1995 Turbo Commander Aircraft,* Nos. 3:99CV–CV–2590(EBB), 3:99–CV–2589 (EBB), 2000 WL 1838334 (D.Conn. Oct.31, 2000). However, we write a brief opinion to explain why Peoples' constructive trust argument fails to support their motions to intervene in this case.

## I. BACKGROUND

### A. The underlying dispute

Peoples seek to intervene in two civil forfeiture proceedings arising from a complex and fraudulent crime scheme orchestrated by Martin Frankel ("Frankel"). On December 30, 1999, the United States commenced *in rem* proceedings against various properties (the "Property") believed to be the proceeds of, or traceable to proceeds of, Frankel's money laundering and other crimes. In accordance with the procedures set forth under Rule C(6) of the Supplemental Rules of Civil Procedure, on February 15, 2000, receivers of various insurance companies now in liquidation ("Receivers") filed verified claims and counterclaims in each of these cases, arguing that the Property belonged to the estates of the insurance companies and should not be forfeited to the federal government. In the event that the Receivers successfully claim a portion of the Property, that portion would be dispersed to policy holders and creditors in state receiver-

ship proceedings. Peoples did not file verified claims in the forfeiture proceedings, although Peoples did file proofs of claim for their losses in state liquidation proceedings. Instead, Peoples filed motions to intervene in the forfeiture proceedings, contending that the Property may be traceable to $14.7 million stolen by Frankel from Peoples.

### B. Peoples' involvement with Frankel

Accepting Peoples' allegations as true for the purpose of deciding its motion to intervene, it appears that the following are the relevant facts:

In approximately 1993, Martin Frankel established the Thunor Trust in Tennessee in order to acquire ownership of insurance companies, including First National Life Insurance Company ("FNLIC") and Franklin American Life Insurance Company ("FALIC").

In June 1998, a broker of blocks of insurance business put Peoples and Veterans in touch with FALIC to explore the possibility of FALIC reinsuring certain blocks of insurance business that were originally underwritten by Peoples.

Peoples rejected the initial proposal because FALIC's financial rating was not high enough to assure regulatory approval. FALIC officials offered as an alternative, a substitute deal with FNLIC, FALIC's highest rated affiliate under the folds of the Thunor Trust. Based on a series of representations regarding FNLIC's financial condition and its statutory financial statements, Peoples entered into a set of agreements with FNLIC.

The agreements entered into included a Master Agreement, a Reinsurance Agreement and an Assumption Agreement. The Agreements were to transfer the initial blocks of insurance business from Peoples to FNLIC, as well as the corresponding

$14,689,593 Reserve Fund which accompanied those blocks of insurance business. The Agreements provided that they would not and could not become effective until the Mississippi Commissioner of Insurance approved the Assumption Agreement. The documents also provided that FNLIC would immediately return any portion of the insurance business and the concomitant portion of the Reserve Fund that was not approved for transfer by the appropriate regulatory authorities.

Further, the Agreements failed to become effective because certain conditions set forth in the Agreements did not occur. However, FNLIC did not return the Reserve Fund because Frankel absconded with it. As a consequence, Peoples lost the Reserve Fund but remained liable for all claims and expenses for the corresponding insurance business.

## C. District court ruling

In a brief opinion, the district court denied Peoples' motions to intervene. The court concluded that Peoples did not have the requisite interest in the Property to intervene as of right. It suggested that Peoples' interest was too speculative and remote, in the sense that Peoples did not even claim to actually know whether they had a direct interest in the seized assets. *See United States v. One 1995 Turbo Commander Aircraft,* Nos. 3:99CV–CV–2590(EBB), 3:99–CV–2589 (EBB), 2000 WL 1838334, at *2 (D.Conn. Oct.31, 2000) (that Peoples lack a legally cognizable interest in the Property "can be recognized by the acknowledgment, oft repeated in

their moving papers, that they 'may' have an interest in the seized assets").

The court also emphasized that even if Frankel stole the money in the Reserve Fund, it would have been stolen from the insurance companies, FNLIC and FALIC, and not from Peoples. *Id.* The receivers for both FNLIC and FALIC are parties in the forfeiture proceedings, and, as the court noted, Peoples properly "filed appropriate proofs of claim in the Mississippi and Tennessee receivership actions," where the assets recovered by the receivers of FNLIC and FALIC in the forfeiture proceedings would be dispersed according to state procedures. Thus, the court reasoned that it could not allow Peoples "to 'leapfrog' over every other worthy (and sometimes worthier) claimant" to a "limited amount of funds." *Id.*

The court concluded that the "Receivers in these actions are the appropriate parties to be pursuing these actions against the monies liquidated out of the seizures to date of the Frankel assets" and therefore denied permissive intervention as well.

This appeal followed.

## II. DISCUSSION

Peoples raise a narrow issue on appeal: whether the district court abused its discretion in denying its motions to intervene. Peoples challenge the district court's decision arguing first that intervention should have been granted as of right under Rule 24(a) of the Federal Rules of Civil Procedure and second that, in the alternative, permissive intervention should have been granted pursuant to Rule 24(b) of the Federal Rules of Civil Procedure.[1] We do not

---

1.  In addition to arguing that the district court properly dismissed Peoples' motions pursuant to Rule 24(a) and (b), Receivers argue that Peoples' motions to intervene would have had to have been dismissed, even if Rule 24(a) or (b) would support intervention, because in a

civil forfeiture proceeding, parties asserting "an interest in or [a] right against the property that is the subject of the action" must do so by submitting a "verified claim" pursuant to the procedure set forth in Supplemental Rule C(6). *See* Supplemental Rules for Certain

find that the court abused its discretion in denying Peoples' motions to intervene,[2] and we affirm for substantially the same reasons as the district court. Our discussion here is limited to Peoples' constructive trust theory. In essence, Peoples claim first that FNLIC held the Reserve Fund in constructive trust for the benefit of Peoples and second that their constructive trust provides a sufficiently direct interest in the Property to permit intervention in the forfeiture proceeding. For the reasons discussed below, we conclude that the latter claim is without merit.

### A. Applicable law

■ For an interest to be cognizable under Rule 24(a)(2), it must be "direct, substantial, and legally protectable." *Washington Elec. Coop., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir.1990); *accord Donaldson v. United States*, 400 U.S. 517, 531, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971) (requiring "significantly protectable interest"), *superceded by statute on other grounds as stated in United States v. New York Tel. Co.*, 644 F.2d 953, 956 (2d Cir.1981); *Kheel*, 972 F.2d at 486; *Restor–A–Dent Dental Labs., Inc. v. Certified Alloy Prods., Inc.*, 725 F.2d 871, 874 (2d Cir.1984) ("[S]uch an interest must be direct, as opposed to remote or contingent."). "An interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." *Washington Elec.*, 922 F.2d at 97.[3] *See also American Lung Ass'n v. Reilly*, 141 F.R.D. 19 (E.D.N.Y.1992) (rejecting argument "that part two of ... Rule 24(a)(2) requires only that an intervenor have a 'potential' interest in a lawsuit").

### B. Analysis

Peoples' argument boils down to the following assertions: (1) FNLIC held the Reserve Fund in constructive trust for the benefit of Peoples and (2) the constructive trust creates a "direct, substantial, and legally protectable" interest that supports intervention in this forfeiture proceeding pursuant to Rule 24(a). Assuming *arguendo* that the first assertion is true, we conclude that the second assertion is not.

Peoples rely on this Court's decision in *Torres v. $36,256.80 U .S. Currency*, 25 F.3d 1154 (2nd Cir.1994). In *Torres*, this Court vacated a district court ruling that

Admiralty and Maritime Claims, Rule C(6) ("Supp. Rule C(6)"). We need not and therefore do not reach that issue in this case because neither Rule 24(a) nor (b) supports intervention. For the same reason, we also decline to address Receivers' alternative arguments for precluding intervention.

2. "We review a District Court's denial of a motion to intervene, whether as of right or by permission, for abuse of discretion." *In re Holocaust Victim Assets Litigation*, 225 F.3d 191, 197 (2nd Cir.2000).

3. In *Washington Elec.*, for example, this Court upheld the district court's determination that the Vermont Department of Public Service was not entitled to intervene as a plaintiff in a lawsuit filed by a Vermont electrical cooperative against an out-of-state electrical wholesaler to recover amounts paid under a power

sales agreement the Vermont Supreme Court had declared void. *See id.* at 93–94. The Vermont Department of Public Service sought to intervene on behalf of the sales agreement participants' ratepayers. *See id.* at 95. This Court held that the Department of Public Service's interest was based on a "double contingency." *Id.* at 97. First, the plaintiff electrical cooperative had to win a judgment against the defendant, and then the Vermont Public Service Board would have to determine that the ratepayers were entitled to a percentage of that judgment. *See id.* This Court held that "such an interest cannot be described as direct or substantial," *id.*, and further noted that allowing the Department of Public Service to intervene would improperly change the complexion of the case. *Id.*

the plaintiff lacked standing to challenge the forfeiture of her husband's certificate of deposit. The plaintiff had alleged that her husband used $30,000 from a loan she lawfully took out from the bank to purchase the certificate and that, notwithstanding the husband's nominal ownership of the certificate, the couple had an agreement that the property would remain hers. *Id.* at 1156. This Court held that the plaintiff had "raised a triable issue of fact whether under New York law, she is the beneficial owner of a constructive trust" and that the alleged ownership interest demonstrated "more than the status of a general creditor." *Id.* at 1157. This Court reasoned if the husband promised to return the property to his wife, then forfeiture by the government would force a breach of that promise and lead to unjust enrichment of the government if the plaintiff was denied standing to contest the forfeiture. *Id.* at 1159.

■ *Torres* certainly supports Peoples' contention that a constructive trust *may* be a sufficient interest to confer standing in a particular forfeiture proceeding. However, *Torres* is distinguishable from this case in a number of important ways that weigh strongly against allowing intervention in this case (even assuming that a constructive trust between Peoples and FNLIC exists).

■ First, the property subject to the constructive trust in *Torres* was readily identifiable as, and thus traceable to, the property subject to forfeiture. By contrast, in this case, the property allegedly subject to the constructive trust (the Reserve Fund) is not readily identified as or traceable to the property subject to forfeiture (Frankel's Property). This distinction weighs *strongly* against recognizing a constructive trust as a sufficiently "direct, as opposed to remote or contingent," interest to satisfy Rule 24(a)(2) in this case, *Restor–A–Dent Dental Labs.*, 725 F.2d at 874, particularly in light of this Court's requirement that funds be traceable *before* a constructive trust will be recognized in analogous cases. *See, e.g., U.S. v. Schwimmer*, 968 F.2d 1570 (2d Cir.1992); [4] *In re Carrozzella & Richardson*, 247 B.R. 595, 601 (2d Cir.BAP 2000) (bankruptcy); *Time Warner v. M.D. Electronics, Inc.*, 101 F.3d 278, 282 (2d Cir.1996) (same).

Second, the constructive trust in *Torres* arose between the nominal owner of the property subject to forfeiture (the husband) and the owner for whom the property was being held in trust (the wife). Recognition of the trust in the *Torres* forfeiture proceeding allowed the wife to oppose forfeiture on the theory that forfeiture itself would lead to the breach of her agreement with her husband (because he would be unable to return the property to

---

4. Interestingly, Peoples also rely on this Court's decision in *U.S. v. Schwimmer*, 968 F.2d 1570 (2d Cir.1992), arguing that this Court held in the context of a RICO forfeiture that a constructive trust was a sufficient interest to petition a court for return of forfeited assets. However, in *Schwimmer*, we explained that "[i]t is hornbook law that *before* a constructive trust may be imposed, a claimant to a wrongdoer's property must trace his own property into a product in the hands of the wrongdoer." *Id.* at 1583 (quoting *United States v. Benitez*, 779 F.2d 135, 140 (2d Cir. 1985)) (emphasis added). Peoples acknowl-edge that they cannot trace the Reserve Fund "into [Frankel's] hands" at this point and argue that they are not required to do so because whether the Reserve Fund can be traced to the seized assets is a "merits" question to be decided at trial. Peoples miss the point though: Peoples must trace the Reserve Fund to Frankel's Property *ex ante* because Peoples are seeking to intervene in the forfeiture proceedings based on an equitable claim to a constructive trust rather than a direct legal interest in the property subject to forfeiture. *See id.*

her). Accordingly, this Court found that the wife had a direct interest in the property that was sufficient for standing purposes. By contrast, in this case, the alleged constructive trust does not involve the nominal owner of the property subject to forfeiture (Frankel). Moreover, the agreement between Peoples and FNLIC has already been breached. Assuming *arguendo* that Peoples are correct in their assertion that a constructive trust exists, such a trust would arise between Peoples and FNLIC on the basis of their failed transaction. Thus, the constructive trust might give Peoples a direct interest in assets recovered by FNLIC, but it would only give Peoples an indirect interest in the property subject to forfeiture.

Third, allowing the plaintiff to proceed on the basis of her constructive trust argument in *Torres* was equitable in the sense that doing so protected the wife's direct interest in the property without affecting the interests of third parties (besides the government). By contrast, in this case, recognizing the alleged constructive trust between Peoples and FNLIC as a sufficiently "direct, substantial, and legally protectable" interest to support intervention would allow Peoples to circumvent the state receivership proceedings and potentially gain an advantage over other creditors and policyholders of FNLIC. Furthermore, there is a risk that allowing Peoples to intervene in this case may open the door for other creditors and thereby undermine state receivership laws.

Thus, even accepting Peoples' arguments (1) that they satisfy the state law requirements for a constructive trust vis-a-vis their relationship with FNLIC, and (2) that *Torres* supports Peoples' contention that a constructive trust may be a suffi-

cient interest to confer standing in a forfeiture proceeding, we find that Peoples' interest in this forfeiture proceeding is nonetheless indirect and contingent, and therefore not cognizable.[5] *See, e.g., Kheel,* 972 F.2d at 486; *Washington Elec. Coop.,* 922 F.2d at 97; *Restor–A–Dent Dental Labs.,* 725 F.2d at 874.

### III.  CONCLUSION

For the reasons set forth above, the ruling of the district court is AFFIRMED.

---

5.  In view of our decision to affirm, Peoples are not parties to the forfeiture proceedings and therefore any ruling that the district court may make concerning the ownership of the Property does not affect Peoples' rights.